473 A.2d 1005

UTICA MUTUAL INSURANCE CO., Appellant,

v.

Laura CONTRISCIANE, Executrix of the Estate of Kenneth Contrisciane, Deceased, and The Aetna Casualty & Surety Co., Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1984.

Decided March 16, 1984.

330

Charles W. Craven, John J. Coffey, Philadelphia, for appellant.

Peter J. Rohana, Jr., Springfield, for Laura Contrisciane.

Robert Rosin, Philadelphia, for Aetna Cas. & Sur. Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

McDERMOTT, Justice.

On December 26, 1976, Kenneth A. Contrisciane was operating an automobile owned by his employer, Future Cars, Inc., when he was involved in a minor traffic accident with a car operated by Anne Killen. While Mr. Contrisciane was exchanging information with Ms. Killen, a police officer, employed by the Borough of Norwood, arrived. The officer told Mr. Contrisciane to get his driver's license and owner's card from his auto. When he returned, the officer was sitting in the police car completing an accident report. Mr. Contrisciane gave the requested information to the officer, and stood beside the police vehicle while the officer completed the report. The police car was situated approximately 97 feet from Mr. Contrisciane's vehicle. While standing there Mr. Contrisciane was struck and killed by an automobile driven by David Patterson, an uninsured motorist.

Laura Contrisciane, as executrix of the estate of the decedent, filed an action, claiming uninsured motorist coverage against Utica Mutual Insurance Company (hereinafter "Utica"), the motor vehicle insurer for Future Cars, Inc.; and against Aetna Casualty and Surety Company (hereinafter "Aetna"), the motor vehicle insurer for decedent's family. The Utica policy, issued in the name of Future Cars, Inc., covered fifteen vehicles with limits of $15,000–30,000. The Aetna policy, issued in the name of decedent's father, covered three vehicles with the same limits. Decedent was designated as a driver on one of the three vehicles insured under the Aetna policy.

This matter proceeded to arbitration in accordance with the Pennsylvania Arbitration Act of 1927, 5 P.S. § 161 *et seq.*[1] The arbitrators found that the estate was entitled to compensatory damages in the amount of 200,000 dollars, but limited coverage to 15,000 dollars under the Aetna

---

1. Act of April 25, 1927, P.L. 381, No. 248, § 1, 5 P.S. § 161 *et seq.*, since repealed by the Act of October 5, 1980, P.L. 693, No. 142, § 501(c), 42 Pa.C.S.A. § 7301 *et seq.*

policy. They based their conclusion on the fact that decedent was not a "named insured" under either of the policies, and he did not pay any of the premiums. Therefore, they permitted coverage only under that part of the Aetna policy covering the automobile for which he was designated as a driver. Recovery was precluded under the Utica policy because the arbitrators ruled that decedent was not "occupying" the Future Cars vehicle at the time he was killed, and therefore, was not an "insured" within the meaning of that policy.

On November 20, 1978, Laura Contrisciane, on behalf of the estate, filed a Petition to Vacate, Modify or Correct an Arbitration Award, in the Court of Common Pleas of Delaware County. That court, per McGovern, J., finding that the definition of "occupying" and the extent of coverage under multiple vehicle policies were questions of law, reversed the arbitrators award. The court held that decedent was indeed "occupying" his employer's vehicle at the time he was struck, and that the coverages for all fifteen vehicles under the Utica policy could be stacked up to the full amount of compensatory damages, i.e. 200,000 dollars. The court also held that there was no basis for recovery under the Aetna policy, because the full amount of damages could be recovered under the Utica policy. However, the court clearly indicated that had the damages been greater, recovery would have been permitted under that policy as well, up to the cumulative amount of the three coverages.

On appeal the Superior Court affirmed. Thereafter Utica petitioned this Court for allowance of appeal, and we granted allocatur. We now affirm in part, and reverse in part.

This appeal presents four basic issues: whether the Court of Common Pleas of Delaware County exceeded its scope of review in entertaining the appeal from the award of the arbitrators; whether the term "occupying" as contained within the Utica policy, was properly construed to cover the decedent herein; whether the decedent's estate should be permitted to stack the coverages provided under a commercial fleet policy; and whether decedent's estate should be

permitted to stack the coverages provided under decedent's father's home policy.

■ The first issue focuses primarily on the review of the arbitrators' decision that decedent was not "occupying" the vehicle insured under the Utica policy.[2] Regarding this issue Section 11 of the Arbitration Act of 1927, provides in relevant part:

§ 171. Modifying or correcting award, grounds

In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

. . . . .

(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

. . . . .

5 P.S. § 171.

Appellant has argued that the determination of whether decedent was "occupying" the Future Cars vehicle was a question of fact, and thus not subject to modification by a reviewing court. In support of their argument they rely on our decision in *Community College of Beaver County v. Community College of Beaver, Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977).

In *Community College,* we held that "where a task of an arbitrator ... has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if the 'interpretation can in any rational way be derived from the agreement, viewed in light of its language, its and any

---

**2.** The question of stacking coverages is clearly one of law, and appellant does not contend otherwise. *See State Farm Mutual Auto Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978).

other indicia of the parties intention' ... (citations omitted)." *Id.*, 473 Pa. at 593–594, 375 A.2d at 1275.

 We think the present case is clearly distinguishable from the collective bargaining scenario of which the Court in *Community College* spoke. Here we do not have a contract in which each term was bargained for. Rather, as with most insurance policies, the terms of the policies at issue here were written by the respective companies. Under such circumstances, where a contract exists without a history of bargaining over the terms, the construction of individual terms of that contract is a question of law. *See Standard Venetian Blind, Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983); *Baldwin v. Magen*, 279 Pa. 302, 123 A. 815 (1924); *Adelman v. State Farm Mutual Auto Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978). *See also Hewes v. McWilliams*, 412 Pa. 270, 194 A.2d 339 (1963); *Blocker v. Aetna Casualty and Surety Co.*, 232 Pa.Super. 111, 332 A.2d 476 (1975). Therefore, it was proper for the court of common pleas to review the conclusions of the arbitrators.

The second issue concerns the interpretation of the term "occupying" which the court of common pleas adopted, and the Superior Court affirmed. The definition of "occupying" which was provided in the Utica policy read as follows: " 'occupying' means in or upon or entering into or alighting from." This language is fairly standard in the insurance industry, yet it has been the subject of extensive litigation in a number of our sister states. We, however, have not previously addressed this issue.

Among those jurisdictions which have resolved the issue, there seems to be two basic approaches to interpreting the definition of "occupying". The first is the strict literal approach whereby a person cannot be "occupying" a vehicle unless he, or part of him is inside or in physical contact with the vehicle. *See Testone v. Allstate Insurance Co.*, 165 Conn. 126, 328 A.2d 686 (1973); *Jarvis v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co.*, 244 N.C. 691, 94 S.E.2d 843 (1956); *Green v. Farm*

*Bureau Mutual Auto Insurance Co.,* 139 W.Va. 475, 80 S.E.2d 424 (1954). *See also Greer v. Kenilworth Insurance Co.,* 60 Ill.App.3d 22, 17 Ill.Dec. 347, 376 N.E.2d 346 (1978). The second approach, focuses upon whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate "use" of the auto. *See Nickerson v. Citizens Mutual Insurance Co.,* 393 Mich. 324, 224 N.W.2d 896 (1975); *Hathcox v. Liberty Mutual Insurance Co.,* 90 Mich.App. 511, 282 N.W.2d 374 (1979); *Sayers v. Safeco,* 628 P.2d 659 (Mont. 1981); *Rau v. Liberty Mutual Insurance Co.,* 21 Wash. App. 326, 585 P.2d 157 (1978); *Sentry Insurance Co. v. Providence Washington Insurance Co.,* 91 Wis.2d 457, 283 N.W.2d 455 (1979); *Robson v. Lighting Rod Mutual Insurance Co.,* 59 Ohio App.2d 261, 393 N.E.2d 1053 (1978).

We believe that the second approach represents the better view, for it is most consistent with the Uninsured Motorist Act,[3] which we have held was intended to protect those "persons who while lawfully *using* the highways themselves suffer grave injuries through the negligent use of those highways by others." (Emphasis added.) *Pattani v. Keystone Insurance Co.,* 426 Pa. 332, 328, 231 A.2d 402, 404 (1967), quoting *Katz v. American Motorists Insurance Co.,* 244 Cal.App.2d 886, 53 Cal.Rptr. 669 (1966). In light of this purpose we believe a liberal interpretation of the term

**3.** In pertinent part that act reads as follows:
§ 2000. Motorists uninsured, insurance protection
(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of person insured there under who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, ...
Act of August 14, 1963, P.L. 909 § 1, as amended, 40 P.S. § 2000.

"occupying" is required and we cannot accept the narrow and restrictive interpretation which has been urged upon us by appellant.

■ Therefore, we hold that when a person is engaged in the lawful use of an insured vehicle, he will be considered to be "occupying" that vehicle within the meaning of the policy, provided he can meet the following criteria:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

See Rau v. Liberty Mutual Insurance Co., supra, 21 Wash.App. at 334, 585 P.2d at 162.

■ Turning to the facts of this case there is no question that the decedent was "occupying" the Utica insured vehicle at the time of the accident. Decedent was lawfully in possession of the Future Cars vehicle at the time of the accident. Once involved in the accident with Ms. Killen he was required by law to stop his vehicle and exchange information with Ms. Killen. See 75 Pa.C.S.A. §§ 3743; 3744. Thereafter he was directed by the officer to bring the information up to the police car. During this time decedent's fiance remained in the car, obviously anticipating the continuance of their journey. At all times decedent was engaged in transactions essential to his continued use of the vehicle, and it was only because of the mandated requirements of the statute and the police officer that decedent found himself physically out of contact with his vehicle. Finally, it was the use of the vehicle which precipitated the whole unfortunate series of events.

The remaining questions involve the very troublesome issues of cumulating benefits under multiple coverages,

otherwise known as "stacking". These issues are presented in two different contexts: the first involves a commercial/fleet policy; and the second, a personal/home policy. As noted above, the lower courts held that since cumulation of coverage was permitted under the commercial/fleet policy there was no need to answer the second question. However, in light of our holding on the first of these issues, we must address both.

The seminal case in Pennsylvania on the issue of stacking is *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). In that case we voided an "other insurance" clause, and held that "where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss." *Id.* 429 Pa. at 395, 241 A.2d at 115. Subsequently, in *State Farm Mutual Auto Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), we held that a policy clause which purported to exclude the cumulation of coverage by a named insured was in derogation of the Uninsured Motorist Act.

■ In *Sones v. Aetna Casualty & Surety Co.*, 270 Pa.Super. 330, 411 A.2d 552 (1979) the Superior Court held that the holding in *Williams* was applicable to liability limitation clauses as well as to exclusionary clauses. We agree. The clear import of *Harleysville, supra,* and *Williams, supra,* is that any attempt by the insurer to diminish the statutorily mandated floor of minimum protection provided by the Uninsured Motorist Act, will be considered void as being repugnant to, and in derogation of, the purpose of that act. That "floor" has been held to apply to each insured vehicle. *See Williams, supra.* Thus, in the context of the present case we find no merit in the reliance by Utica and/or Aetna on the provisions in their policies purporting to limit liability.

■ However, resolution of the stacking issue is not disposed of by merely voiding the limitation of liability clauses. We must also decide whether a person who is

insured only because he is an occupant in a vehicle insured under a fleet policy is entitled to stack coverages. We hold that he may not.

The basis upon which our Court has justified stacking is twofold: first, that it furthers the policies sought to be accomplished by the act; and second, that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. *See Harleysville v. Blumling, supra.* The latter rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.

The terms of the Utica policy, under which decedent's estate has claimed coverage, described three different classes of insured. They are as follows:

PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either,

(b) any other person while occupying an insured highway vehicle; and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

(Reproduced Record at 101 a.) These classifications are contained in most uninsured motorist policies, and have come to be described as "class one"; "class two;" and "class three" coverage.

In this case, decedent's entitlement to coverage was predicated on his occupation of the vehicle at the time of the accident: a "class two" type of coverage.[4] A claimant

4. We expressly reserve for another day the questions of whether a "class one" insured may stack coverages under a fleet policy, and whether the owner and/or officers of a corporation are "class one" insureds under a policy issued in the name of a corporation. *See e.g.*

whose coverage is solely a result of membership in this class has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage.

Since the decedent here asserted nothing more than "class two" coverage, his entitlement arose from his temporary status as an occupant, rather than from his being a specifically intended beneficiary of the insurance policy. Therefore there is no basis upon which to allow his estate to stack the coverages applicable to the other vehicles,[5] and his recovery under the Utica policy is limited to the 15,000 dollar coverage applicable to the vehicle he was operating.

In light of this holding, the question remains whether decedent's estate may recover against the Aetna policy which was carried by decedent's father, and if so, may the multiple coverages be stacked.[6]

As stated in the facts above, decedent was a designated driver of one of the three automobiles insured under the Aetna policy. In addition, decedent was the son of the named insured and resided in the latter's household. The

*Marchese v. Aetna Casualty & Surety Co.,* 284 Pa.Super. 579, 426 A.2d 646 (1980).

5. We note that other jurisdictions which have confronted this issue have resolved it in a similar manner. *See Holloway v. Nationwide Insurance Co.,* 376 So.2d 690 (Ala.1979); *Lumbermens Mutual Casualty Co. v. Martin,* 399 So.2d 536 (Fla.App.Dist. 3, 1981); *Ohio Casualty Insurance Co. v. Stanfield,* 581 S.W.2d 555 (Ky.1979); *Burns v. Fernandez,* 401 So.2d 1033 (La.App.1981); *Linderer v. Royal Globe Insurance Co.,* 597 S.W.2d 656 (Mo.App.1980); *Cunningham v. Insurance Company of North America,* 213 Va. 72, 189 S.E.2d 832 (1972); *Continental Casualty Company v. Darch,* 27 Wash.App. 726, 620 P.2d 1005 (1980). *See also Burke v. Aid Insurance Co.,* 487 F.Supp. 831 (D.C.Kan.1980).

6. As noted above, the court of common pleas held that the multiple coverages could be stacked. However, recovery was denied because decedent's damages did not exhaust the coverage under the Utica policy. This holding was not specifically addressed by the Superior Court, but the thrust of their opinion relating to stacking, as well as their prior decisions, clearly indicate that they agreed with this holding.

award of the arbitrators mandated that decedent's estate could recover under one of the three coverages. This award of single coverage was not appealed by Aetna. In fact in their answer to decedent's Petition to Vacate, Modify or Correct an Arbitration Award, they "admitted that decedent ... was an 'insured' under the Protection Against Uninsured Motorist section of the policy issued to Peter C. Contrisciane."

Aetna has, however, objected to decedent's contention that the coverages on all three vehicles may be stacked. In support of its position, Aetna has argued that decedent did not fall within the first criterion of *Williams, supra,*[7] (i.e., that he be a named insured who has paid the premium) and therefore, should not be permitted to stack the remaining coverages. We reject this argument.

■ Contrary to the assumption of Aetna, the criteria set out in *Williams* are not necessarily applicable to all claimants, in that they are not absolute conditions precedent to recovery in all cases. The Court in *Williams* merely defined one group of persons who were entitled to stack coverages, and nothing therein precludes us from extending the right to stack coverages to all persons within the "class one" category of "insureds". We believe that such an extension is consistent with our decisions in *Harleysville, supra,* and *Williams supra;* and that it comports with our decision above to condition a claimant's entitlement to stack on his status as a specifically intended beneficiary of the policy. Furthermore, this conclusion is supported by the decisions of a number of the other jurisdictions. *See* e.g. *Allstate Insurance Co. v. Morgan,* 59 Hawaii 44, 575 P.2d 477 (1978); *Bradley v. Mid-Century Insurance Co.,* 409

7. In *Williams, supra,* this Court stated: an "insured may recover uninsured motorist benefits:
 1. If the injured party paid the premiums of the policy and was the named insured; and
 2. If the recovery under the second uninsured motorist coverage was limited to actual damages; and
 3. If the recovery is not limited by the statutory exclusions." *Id.* at, 481 Pa. 143, 392 A.2d 287.

Mich. 1, 294 N.W.2d 141 (1980); *Bill v. Allstate,* 109 Mich. App. 124, 310 N.W.2d 919 (1981); *Chaffee v. U.S. Fidelity & Guaranty Co.,* 181 Mont. 1, 591 P.2d 1102 (1979); *Taft v. Cerwonka,* R.I., 433 A.2d 215 (1981); *Cunningham v. Insurance Co. of North America,* 213 Va. 72, 189 S.E.2d 832 (1972). *See also Lundy v. Aetna Casualty & Surety Co.,* 92 N.J. 550, 458 A.2d 106 (1983).

■ Applying this standard to the facts of this case it is evident that decedent's estate is entitled to the full extent of the coverages provided under the Aetna policy. "Class one" coverage under that policy includes "the named insured and any relative." Decedent was the son of the named insured as well as a member of his household.

Therefore, under the scheme which we have endorsed we hold that decedent's estate may recover the full 45,000 dollars against Aetna, in addition to the 15,000 dollars due under the Utica policy.

To the extent that the order of the Superior Court is consistent with this opinion it is affirmed. In all other respects it is reversed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I agree with the majority, that construction of the term "occupying" as used in the policy issued by appellant, Utica Mutual Insurance Co. (Utica) is a question of law properly reviewable by the courts. Additionally, I am in agreement with the majority's conclusions that, within the meaning of the policy, the decedent was "occupying" the Utica insured vehicle when he was struck and killed.

I must dissent, however, to the majority's holding that appellee is not entitled to "stack" uninsured motorist coverage under the Utica fleet policy. The insurance policy in question describes persons insured as follows:

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either

(b) any other person while occupying an insured highway vehicle; and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

The named insured is decedent's employer, Future Cars, Inc., and according to the evidence no one was named as a designated insured. The appellee's decedent qualifies as an insured under sub-paragraph (b) above as a person occupying an insured highway vehicle.

The issue of whether stacking of coverages under the uninsured motorists provisions of an insurance policy is permitted has been affirmatively resolved by this Court. In *Harleysville v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), we invalidated a policy provision which attempted to limit liability and preclude stacking. We said there that: "The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers." *Id.*, 429 Pa. at 395, 241 A.2d at 115. In *Harleysville*, we held: "[W]here the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss."

In *State Farm Mutual Automobile Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), the injured victim was driving his wife's automobile when he was involved in an accident with a vehicle driven by an uninsured motorist. He was paid the coverage limits under his wife's uninsured motorist protection and, because his damages exceed his recovery under his wife's policy, he applied for further coverage under a policy of his own. Coverage under his policy was denied based upon an exclusionary clause contained therein. Relying on *Harleysville*, we invalidated the exclusionary clause and said:

"[T]he legislative intent, as expressed in the words of the uninsured motorist statute and as interpreted in *Harleys-*

*ville* is clear. The insured may recover uninsured motorists benefits:

1. If the injured party paid the premiums of the policy and was the named insured; and

2. If the recovery under the second uninsured motorist coverage was limited to actual damages; and

3. If the recovery is not limited by the statutory exclusions."

Apparently interpreting the *Williams* requirements as absolute conditions to recovery in all cases, the majority holds that because the decedent was not a named insured and he did not pay the insurance premiums for the Utica policy, he was not a specifically intended beneficiary; and since his status as an insured was only due to his occupying an insured vehicle, the appellee is not entitled to stack the Utica coverage. I disagree with this reasoning and would hold that the appellee may cumulate the Utica uninsured motorist coverage.

In *Sones v. Aetna Casualty And Surety Co.*, 270 Pa.Super. 330, 411 A.2d 552 (1979), the Superior Court permitted the injured passenger-claimant, Zelda Sones, to stack uninsured motorist coverages of a policy issued to and paid for solely by her husband which provided insurance protection for three vehicles he owned. We denied Aetna's petition for allowance of appeal on June 16, 1980.

In *Marchese v. Aetna Casualty and Surety Co.*, 284 Pa.Super. 579, 426 A.2d 646 (1981), the claimant was permitted to stack uninsured motorist coverages under a "garage" policy issued to his corporate employer, Wrona Pontiac-Cadillac, Inc. There the injured claimant was not a named insured, nor did he pay any of the premiums for the policy. He was, however, designated as a person to whom dealer's plates would be issued for use on a corporate vehicle. The Superior Court stated:

"Although the words of *Williams* state that payment of the premium by the injured party is a requirement, and such requirement was met in *Williams*, we do not accept

that statement as a condition precedent to recovery in all cases."

*Id.*, 284 Pa.Super. at 585, 426 A.2d at 649.

Aetna's petition for allocatur to our Court was denied on June 1, 1981.

The appellee's decedent here is an insured under the Utica policy and as such the appellee is entitled to cumulate coverage. It matters not that he is an insured by virtue of his occupancy of an insured vehicle.

"Where there exists a valid contract of insurance which contains uninsured motorist coverage, an insurance carrier is obligated to compensate the insured for damages inflicted upon the insured because of the conduct of the owner and/or operator of an uninsured motor vehicle . . ."

*State Farm Mutual Automobile Insurance Co. v. Williams, supra.*

Additionally, the named insured in the Utica policy is Future Cars, Inc., the corporate employer of the decedent. There is no individual person who is a named insured or a designated insured. The corporation which is the named insured is not a living person and is unable to sustain bodily injury. The uninsured motorist coverage can only be applicable to human beings who suffer personal injuries at the hands of an uninsured motorist. A corporation can only act through its directors, officers and agents and the decedent was an authorized agent of Future Cars, Inc., the corporate named insured. It follows then that the directors, officers and agents of the corporation were intended beneficiaries of the Utica policy and the decedent as an authorized agent was an intended beneficiary. To hold otherwise is to say that there are no intended beneficiaries of the uninsured motorist coverage in the Utica policy.

The Uninsured Motorist Act is a remedial statute and we have repeatedly stated that to give effect to its broad remedial purposes, the Act must be liberally construed. *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 300 A.2d 61 (1973); *Harleysville v. Blumling*, 429 Pa. 389,

241 A.2d 112 (1968); *Pattani v. Keystone Insurance Co.,* 426 Pa. 332, 231 A.2d 402 (1967). If we should err in ascertaining the intent of the legislature or the meaning of an insurance policy provision, we should err in favor of coverage for the insured. *Allstate v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). We have applied this axiom in close or doubtful insurance cases to find coverage for the insured. *Id.* at 491 Pa. 455, 421 A.2d 633.

Because the appellee's decedent, was an insured under, and an intended beneficiary of the Utica policy, I would hold that the appellee is entitled to stack coverage under the uninsured motorists provisions of Utica fleet policy.