## Downing v. Harleysville Insurance Co.

*Philip H. Baer,* for plaintiff.
*William H. Pugh IV,* for defendant.

YOHN, *J.*, August 6, 1990 — Plaintiff, Reginald Downing, was seriously injured in an automobile accident. He seeks to recover first-party benefits as an "occupant" under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq.

On December 14, 1984, plaintiff was a passenger in a vehicle operated by Gerald W. Hartley, insured by the Prudential Insurance Company.[1] While traveling north on Pa. Route 113 in Montgomery County, Hartley and plaintiff noticed a disabled vehicle and stopped to render assistance. The disabled vehicle, insured by defendant, Harleysville Insurance Co., was owned by John B. Arnold and had been immobilized by a flat tire. Both plaintiff and Hartley exited their vehicle to help repair the tire. While standing adjacent to the disabled vehicle, plaintiff was struck by another vehicle operated by Grant L. Gaugler. Gaugler was subsequently found to be an uninsured motorist who was driving while under the influence of alcohol. At the time of the impact, the trunk of the disabled vehicle was open and Hartley was in the process of gathering additional tools from inside the trunk.

Plaintiff sustained extremely serious injuries, including cerebral hypoxia and fracture and crush injuries to his right leg. He has remained comatose since the accident and his right leg has been amputated. Plaintiff's subsequent medical expenses have been substantially in excess of $100,000.

On May 27, 1986, plaintiff, joined by his wife and guardian, Billie Jean Downing, commenced a civil action against both Prudential and Harleysville for first-party benefits. The medical benefit coverage

---

1.  Plaintiff neither owned a car nor lived with any relative that owned a car.

under the Prudential policy is $10,000 and under the Harleysville policy is $100,000.

Prudential subsequently paid plaintiff the maximum amount of its coverage, $10,000, plus interest and counsel fees and was dismissed from this action.

Plaintiff thereafter filed a motion for summary judgment against defendant Harleysville. Harleysville answered plaintiff's motion for summary judgment and filed a cross-motion for summary judgment.

On March 7, 1990, summary judgment was granted in favor of plaintiff as to liability only for first-party benefits in accordance with section 1713(a)(3) of the act. The court concluded that Reginald Downing was an "occupant" under the act of both the Hartley vehicle in which he had been a passenger and the disabled Arnold vehicle which he was then assisting. As a result, plaintiff was entitled to multiple coverage under section 1713(a)(3) by both insurance companies with their rights of contribution to be determined under the provisions of section 1713(b) of the act.

The parties thereafter agreed that the total medical expenses sustained by plaintiff in the accident were in excess of $100,000. Based on this record the court then entered judgment in favor of plaintiff and against defendant, Harleysville, in the amount of $90,000 plus interest. The maximum coverage under the insurance policy with Harleysville was in the amount of $100,000. Prudential having already paid $10,000 toward first-party benefits, the $90,000 judgment represented the balance of coverage available to the plaintiff. Defendant Harleysville appealed the entry of judgment.

## DISCUSSION

The issue on appeal is whether plaintiff was an "occupant" under the terms of the act of the disabled vehicle insured by defendant Harleysville and is thus entitled to multiple coverage for first-party benefits under section 1713(a)(3) of the act.

The Pennsylvania Motor Vehicle Financial Responsibility Law outlines who is liable for the payment of first-party benefits, as follows:

"§1713. *Source of benefits.*

"(a) *General rule* — Except as provided in section 1714 (relating to ineligible claimants), a person [injured in a motor vehicle accident] who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first-party benefits against applicable insurance coverage in the following order of priority:

"(1) For a named insured, the policy on which he is the named insured.

"(2) For an insured, the policy covering the insured.

"(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

"(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purposes of this paragraph, a parked or unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury.

"(b) *Multiple sources of equal priority* — The insurer against which a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is therefore entitled to recover contribution pro rata from any other insured for the benefits paid

and the costs of processing the claim. If contribution is sought among insurers responsible under subsection (a)(4), proration shall be based on the number of involved motor vehicles.''

Plaintiff was clearly an ''occupant,'' under section 1713(a)(3) of the act, of the Hartley vehicle insured by Prudential. Indeed, Prudential has paid the limit of its insurance coverage ($10,000) to plaintiff. If plaintiff is also an ''occupant'' under section 1713(a)(3) of the act of the disabled Arnold vehicle insured by Harleysville he is likewise entitled as a result of this multiple coverage to the limit of that company's coverage ($100,000) less the amount paid by Prudential.

In *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), our Supreme Court analyzed the definition of the term ''occupying'' contained in an insurance policy when the policy itself defined the term as ''in or upon or entering into or alighting from'' the vehicle. Although the legal issues in that case were somewhat different from those in the instant case, the factual situation in the *Contrisciane* case, in which the decedent was struck and killed by a passing car while he stood adjacent to a police car after being instructed to provide information to a police officer at the scene of the accident, is strikingly similar to that of the instant case.

The Supreme Court considered a strict literal approach to the definition of ''occupying'' using the specific language of the insurance policy and rejected that approach as being a ''narrow and restrictive interpretation.'' Instead, it adopted a more ''liberal interpretation'' of the policy language because this view emphasized ''whether the person claiming benefits was performing an act (or acts)

which is (are) normally associated with the maintenance of an automobile." *Contrisciane* at 335, 473 A.2d at 1009.

The court in *Contrisciane* further determined that there were four criteria which would determine whether or not a person was occupying a vehicle. The court held that a person will be considered to be "occupying" a vehicle within the meaning of an insurance policy if the following conditions exist:

"(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

"(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

"(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

"(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." *Contrisciane* at 336, 473 A.2d at 1009. See *Rau v. Liberty Mutual Insurance Co.,* 21 Wash. App. at 334, 585 P.2d at 162.

The regulations adopted by the Insurance Department, pursuant to the act, contain the minimum requirements for an insurance policy with reference to a basic loss benefits endorsement. The endorsement must, at a minimum, contain a definition of "occupant" identical to that contained in the *Contrisciane* case. 31 Pa. Code §66.102. This definition is fairly standard in the insurance industry. *Contrisciane* at 334, 473 A.2d at 1008. Evidence was presented in this case with reference to the definition of the term in the applicable insurance policy so the court has assumed that it includes the minimum standard under both the Pennsylvania Motor Vehicle Financial Responsibility Law and the regulations

of the Insurance Department. Since this court has ruled that the plaintiff can recover under the minimum standards, a more broadly written policy would have no effect other than to buttress the decision.

Since the definition of "occupant" in the instant case is the same as in *Contrisciane,* when viewed through the *Contrisciane* standards, it is clear that the plaintiff has met those criteria for *both* the Harleysville vehicle and the Prudential vehicle. An analysis of the instant claim against Harleysville through the *Contrisciane* standards reveals the following:

(1) since the plaintiff was engaged in replacing the left rear tire of the Harleysville vehicle and was severely injured while doing so by the vehicle operated by Grant L. Gaugler Jr., a causal relation existed between his injury and the use of the insured vehicle;

(2) the plaintiff, although not actually touching the Harleysville vehicle, was in very close geographical proximity to the Harleysville vehicle at the time he was struck;

(3) the plaintiff was vehicle oriented, rather than highway oriented at the time of the accident since he was assisting in the replacement of the flat tire; and

(4) the plaintiff was engaged in changing the tire of the Harleysville vehicle, a transaction essential to the operation and use of the vehicle at the time since it was disabled without the replacement of the tire.

Although it would seem clear that each of these standards has been met, defendant asserts that the *Contrisciane* standards contain an implied assumption that the claimant must have been inside the vehicle at some particular time in order to be deemed an "occupant." However, nowhere in that

opinion is such an assumption suggested. In addition, the second standard set forth in the opinion relates to the claimant being in "reasonably close geographical proximity to the insured vehicle although the person need not be actually touching it." *Contrisciane* at 336, 473 A.2d at 1009. This standard does not state that the person must have been inside the vehicle previously. In the event that the court intended to add a requirement that the person be inside the vehicle at some particular time this standard would certainly have included that requirement since the court considered and articulated the necessity of the person being "reasonably close" to the vehicle but did not require the person to be "in" the vehicle or even "actually touching it."

There have been several analogous cases which utilize the *Contrisciane* standards while construing the term "occupant" pursuant to section 204 of the former Pennsylvania No-fault Motor Vehicle Insurance Act.

The facts involved in *Porter v. CNA Insurance Co.,* 14 Phila. Rep. 276 (1982), are almost identical to the ones at issue in the instant case except that the claimant in *Porter* jumped on the hood of the disabled vehicle immediately prior to impact. 14 Phila. Rep. at 277. The Honorable Abraham J. Gafni found in *Porter* that these facts met the *Contrisciane* standards and plaintiff could recover first-party benefits from the insurance carrier for the disabled vehicle. Surely the fact that the plaintiff in that case jumped on the hood of the vehicle to avoid the impact, whereas in the instant case the plaintiff did not have time to take any evasive action, should not be a distinction on which insurance coverage rises or falls. See also, *Tyler v. Insurance Co. of North America,* 311 Pa. Super. 25, 457 A.2d 95 (1983)

(passenger of a bus that had stopped five feet from shoulder of road who was struck by a motorcycle passing the bus on the right side was deemed an "occupant" of the bus under the No-fault Act.) *Schultz v. Nationwide Insurance Co.,* 295 Pa. Super. 146, 541 A.2d 391 (1988) (woman who was injured while putting gasoline in her uninsured car when third party struck parked vehicle which in turn struck woman who was "driver and occupant" of the uninsured vehicle under the *Contrisciane* standards).

It is important to note that the court, when interpreting a statute, must utilize the Statutory Construction Act, 1 Pa.C.S. §1901 et seq. This statute directs that "remedial legislation," such as the act in the instant case, "shall be liberally construed to effect [its] objects and to promote justice." 1 Pa.C.S. §1928. Furthermore, the appellate courts of this state have often stated that "since insurance statutes are not among those types of statutes designated by our legislature as requiring strict construction, we are to construe them liberally in order to effect their purpose." *Mattia v. Employers Mutual Companies,* 294 Pa. Super. 577, 440 A.2d 616 (1982).

When the words of a statute are not explicit, the consequences of a particular interpretation may also be considered when determining the intent of remedial legislation. 1 Pa.C.S. §1921(c)(6). The consequences of a liberal interpretation of section 1713(a)(3) in the instant case would parallel the past interpretations of the Uninsured Motorist Act. *Sands v. Granite Mutual Insurance Co.,* 232 Pa. Super. 70, 331 A.2d 711 (1974); *Marchese v. Aetna Casualty and Surety Co.,* 284 Pa. Super. 579, 426 A.2d 646 (1981); *State Farm Insurance Co. v. Bul-*

*lock,* 316 Pa. Super. 475, 463 A.2d 463 (1983); see also 1 Pa.C.S. 1928.

In *Sands,* the court held that the Uninsured Motorist Act requires "a liberal construction . . . and a pronounced propensity on part of the court to find coverage unless equally strong or equitable considerations to the contrary are present." *Sands* at 80, 331 A.2d at 717. A similar liberal construction should be afforded to the act in the instant case to assure the plaintiff receives adequate first-party loss benefits from the defendant under section 1713(a)(3).

Moreover, the intent of the act in the instant case is analogous to that of the Uninsured Motorist Act, which has been construed to "protect those persons who while using the highways themselves suffer grave injuries through the negligent use of those highways by others." *Patiani v. Keystone Insurance Co.,* 426 Pa. 332, 328, 231 A.2d 402, 404 (1967), quoting *Katz v. American Motorists Insurance Co.,* 244 Cal. App. 2d 886, 53 Cal. Rptr. 669 (1966). There is little doubt that plaintiff in the instant case was an individual who suffered grave injuries through the negligent use of the highway by another.

Defendant also contends, however, that there cannot be a "stacking" of coverage under the various subsections of section 1713(a) of the act. This is correct. Under *Laguna v. Erie Insurance Group,* 370 Pa. Super. 308, 536 A.2d 419 (1988), once there is recovery under one of the subsections in section 1713(a), the claimant cannot proceed against an insurance company which is responsible under one of the other subsections. However, *Laguna* also reaffirms the principle that there can be multiple insurance coverage within the same priority levels of section 1713(a). *Laguna* states that section

1713(a) "creates a clear order of priority of first-party benefits coverage. The provision of section 1713(b) regarding procedures to be followed in the event of multiple sources of coverage is limited to sources of equal priority." *Laguna, supra.*

The multiple coverage sought in the instant case is in accord with the *Laguna* holding since both sources of coverage (Prudential and Harleysville) are of an "equal priority level" under section 1713(a)(3). Therefore, there is no "stacking" of coverage involved in the instant case. The practical result of the prohibition against stacking is that the plaintiff cannot recover the full amount of coverage from both insurance companies; i.e., $10,000 plus $100,000 for a total of $110,000. Plaintiff is restricted under the multiple coverage to recovering the maximum amount under either of the policies; i.e., $100,000, in this case and then the two insurance companies are to prorate that amount under section 1713(b) of the act.

This conclusion is further confirmed by the language of the Insurance Department Guidelines. Guideline B-9[2] clearly contemplates multiple coverage in section 1713(a)(3) situations since it provides for contribution among the insurance companies in

---

2. Any insurer which pays a claim for first-party benefits is thereafter entitled to recover contribution pro rata from any other insurer in the same priority class for the benefits paid and the costs of processing the claim. If the priority class is (1), (2) or (3), contribution shall be pro rata by limits. For priority class (4) contribution is pro rata by the number of motor vehicles involved in the accident. The total amount paid by any insurer as first-party benefits to the injured person or personal representative and as contribution to other insurers for benefits paid shall not exceed the company's limit of liability.

that event. In addition, Guideline B-16[3] provides in its entirety that the claimant can only recover from one of the four classes of priority but does not limit the claimant to only one insurance policy within a particular class. Therefore, it too contemplates multiple coverage within a single level of priority.

Finally, there is a general principle in insurance law that where there is a question of coverage, the courts will err in favor of concluding that there is coverage because the insurance policies are written exclusively by the insurance companies without negotiation with the insured so that they should be construed against the insurance company to the extent justified by the language of the policy. *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980).

In *Heffner,* the Supreme Court stated that "[h]istorically, the courts of this Commonwealth have routinely followed this spirit and found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we [the courts] should err in ascertaining the intent of the legislature or the intent of an insurance policy, we should err in favor of coverage for the insured." *Heffner* at 455, 421 A.2d at 663.

## CONCLUSION

For all the foregoing reasons the judgment entered in favor of plaintiff on May 31, 1990 should be affirmed.

---

3. A person who suffers injury arising out of the maintenance or use of a motor vehicle may not recover first-party benefits from policies in more than one priority class. There shall be no payment under a policy if there is another insurer at a higher level of priority. The highest priority level listed in section 1713(a) is the first level which provides benefits to the name insured.