**SELECTIVE INSURANCE COMPANY OF AMERICA, Plaintiff**

v.

**Gayle JASKOLOKA, Administratrix of the Estate of Linda Jaskoloka, Deceased, Defendant**

**No. 3:02 CV 673.**

United States District Court, M.D. Pennsylvania.

Nov. 25, 2003.

James C. Haggerty, Suzanne T. Tighe, Swartz Campbell & Detweiler, Philadelphia, PA, for Plaintiff.

David A. Aikens, Jr., Joseph A. Quinn, Jr., Michael J. Kowalski, Hourigan, Kluger, and Quinn, P.C., Kingston, PA, for Defendant.

## MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition are motions for summary judgment filed by the plaintiff, Selective Insurance Company of America ("Selective"), and the defendant, Gayle Jaskoloka, administratix of the estate of Linda Jaskoloka. The motions have been fully briefed and argued, and they are ripe for disposition. For the reasons that follow, plaintiff's motion will be denied and defendant's motion will be granted.

### Background

On April 18, 2001 decedent Linda Jaskoloka, an employee of Tobyhanna Township Department of Public works, was working on the highway clearing brush alongside the road and loading it into her truck. *See* Police Report, Defendant's Exhib. B. She sustained fatal injuries when a driver, Matthew Ferrell, struck her and crushed her between his automobile and the back of the dump truck she was using. *Id.;* Compl. ¶ 5; Answer ¶ 4.

Defendant Jaskoloka, administratrix, made a claim upon Plaintiff Selective to recover underinsured motorist benefits pursuant to a township insurance policy worth $1,000,000.00. Compl. ¶¶ 9, 11. Defendant had previously recovered $15,000

from the tortfeasor. Compl. ¶¶ 7–8. It is undisputed that decedent was in the course and scope of employment when killed. Compl. ¶ 5; Answer ¶ 4. Defendant, however, further contends that decedent was an "occupant" of the township's dump truck, as the term has been defined by the courts of this Commonwealth, when killed. Answer ¶ 4. As such, defendant contends that decedent was covered under the township's insurance policy.

In response to the defendant's request for insurance benefits from the township's insurance policy, plaintiff initiated this declaratory judgment action on April 22, 2002. The complaint contains two counts. In the first count, plaintiff argues that the estate of Linda Jaskoloka is not eligible for underinsured motorist benefits under the township's policy. In the second count, plaintiff argues that if defendant is deemed covered, then the maximum she could recover is $500,000 according to Pennsylvania's Political Tort Claims Act (PTCA).

Plaintiff and defendant have filed cross-motions for summary judgment. At oral argument on the motions, plaintiff advised the court that it was withdrawing its second count on the PTCA. Also at oral argument, defendant advised the court that she was withdrawing her argument that the deceased was covered by the "you" language under the township's insurance policy. Thus, the only dispute remaining for this court to resolve is whether the decedent is covered by the "occupant" language in the township's insurance policy.

### Jurisdiction

The Court exercises jurisdiction over this case pursuant to the diversity statute, 28 U.S.C. § 1332. Because the Court is sitting pursuant to its diversity jurisdiction, the substantive law of Pennsylvania shall apply. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie*

*R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

## Standard of Review

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

## Discussion

In order to maintain a claim for recovery of benefits under the policy, the decedent, Linda Jaskoloka, must have been an insured for purposes of underinsured motorist benefits. With regard to Underinsured Motorist Coverage, the policy of insurance under which the claim has been made provides, in pertinent part:

A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability must result from the ownership, maintenance or use of an "underinsured motor vehicle."

*See* Pennsylvania Underinsured Motorist Coverage—Nonstacked, Plaintiff's Exhibit G.

"Insured" is defined in the policy, as follows:

B. Who is Insured

1. You

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle" must be out of service because of its breakdown, repair, servicing or "loss" or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

*See id.*

The only issue before this court is whether the decedent is covered under

section B.3 of the insurance policy as "[a]nyone else 'occupying' a covered 'motor vehicle.'" Plaintiff contends that, at the time of the accident, the decedent, Linda Jaskoloka, was not occupying a covered motor vehicle. After careful review, we disagree.

In interpreting the term "occupancy," Pennsylvania courts have focused on "whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate 'use' of the auto." *Utica Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1009 (1984). The Pennsylvania Supreme Court set out four factors that must be established for a person to be considered "occupying" a vehicle:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.*

In the present case, there is no dispute that the decedent was in close proximity to the insured vehicle. The second factor is, therefore, established. The parties do dispute, however, whether factors one, three and four are established. We will address each of these factors seriatim.

Plaintiff contends that the first factor is not established because there is no causal connection between the injuries of the decedent and the use of the insured vehicle. Plaintiff's Brief, p. 14. Plaintiff asserts that "[t]he involvement of the Township truck was mere happenstance. Similar to Zukowski, the decedent in the present action, exited the insured vehicle without incident. There is no evidence that at the time of the accident, the decedent was entering, exiting or preparing to enter or exit insured vehicle." *Id.*, citing *Great Am. Ins. Co. v. Zukowski*, No. 95–C4470, 1996 WL 368256, at *3 (E.D. Pa. June 24, 1996). The plaintiff asserts that "[t]he decedent, during the accident, may have been crushed against the insured Township vehicle however, this is not sufficient to establish a causal connection." Plaintiff's Brief, pp. 14–15. We disagree.

Plaintiff's reliance on *Zukowski* is misplaced. There, the individual was "approximately 100 yards away from the vehicle" and the court concluded that there was "no evidence that would link the parked, locked vehicle to the actions of the hit-and-run driver." *Zukowski*, 1996 WL 368256, at *3. Here, on the other hand, there is substantial evidence that links the township truck to Mr. Ferrell's car and the decedent's fatal injuries. Mr. Ferrell's car actually struck the township's truck. *See* Police Report, Plaintiff's Exhib. B; Compl. ¶ 5; Answer ¶ 4. When this occurred, the decedent's "head went onto the car and her feet went under the truck." Police Report, Plaintiff's Exhib. B.[1] Evidence that the decedent was "crushed against the insured Township vehicle," Plaintiff's Brief, p. 15, is more than suffi-

1. The decedent's co-worker, Stephen Walkins, testified that her whole body came into contact with the township truck at the time of impact. Stephen Walkins Dep. Testimony, Defendant's Exhibit A, p. 27 ("all of her body hit the back of the truck. Her legs went up under her, her face— her chest went up to the tailgate and her legs were pushed under it, and then she was being pushed under there and she come back and hit the back, the hood of the, of the car.")

cient to establish a causal connection between her injury and the use of the township's vehicle.[2] Accordingly, we find that the first *Utica* factor is established.

Plaintiff contends that the third factor is not established because "[a]t the time of the accident the decedent, Linda Jaskoloka, was not vehicle oriented; rather the decedent, Linda Jaskoloka, was highway oriented." Plaintiff's Brief, p. 15. Plaintiff claims that "removing brush from the side of Tanglewood Drive and loading into the rear of the township truck" is a highway oriented task. *Id.* We disagree.

The facts in *Utica* are instructive on this point. In *Utica*, the plaintiff's decedent was operating his employer's motor vehicle when involved in a traffic accident. *Id.* at 1006. Following the accident, he exited the vehicle and approached the responding police car to provide information. *Id.* at 1006–07. While standing at the police car, he was struck by an uninsured motorist and killed. *Id.* at 1007. Applying the four factors discussed above, the Pennsylvania Supreme Court held that the decedent remained an occupant of the motor vehicle at the time of the accident because he:

> was lawfully in possession of the [employer's] vehicle at the time of the accident. Once involved in the accident, . . . he was required by law to stop his vehicle and exchange information . . . Thereafter he was directed by the officer to bring the information up to the police car. During this time decedent's fiance

remained in the car, obviously anticipating the continuance of their journey. At all times decedent was engaged in transactions essential to his continued use of the vehicle, and it was only because of the mandated requirements of the statute and the police officer that decedent found himself physically out of contact with his vehicle. Finally, it was the use of the vehicle which precipitated the whole unfortunate series of events.

*Id.* at 1009.

Here, as in *Utica*, the decedent was lawfully in possession of the dump truck at the time of the accident. She was required by her employer to load it with cleared brush. There is sufficient evidence to establish that the truck was running at the time of the accident in anticipation of their continuing use of it to transport cleared brush.[3] Moreover, the decedent was physically in contact with the truck when she was struck. *See* Stephen Walkins Dep. Testimony, Defendant's Exhibit A, p. 23.

Other Pennsylvania courts have found individuals to be "vehicle oriented" in a range of situations. *See Fisher v. Harleysville*, 423 Pa.Super. 362, 621 A.2d 158, 160 (1993), *appeal denied*, 637 A.2d 285 (Pa.1993) (holding that individual was "vehicle oriented" because he was unloading his gun in preparation to enter a truck); *Frain v. Keystone Insurance Co.*, 433 Pa.Super. 462, 640 A.2d 1352, 1357 (1994) (holding that the individual was "vehicle

---

2. In addition, her injury is directly related to the use of the dump truck. The decedent was leaning into the back of the truck to load it with brush when she was struck. *See* Stephen Walkins Dep. Testimony, Defendant's Exhibit A, p. 23 (at the time of the accident, "[b]oth her arms were leaning into the truck with brush."). Her actions at the time of the accident and the resulting fatal injuries were therefore directly related to the truck's purpose, which is to be loaded with brush and to carry it away.

3. Decedent's co-worker is "90 percent sure" that the truck had been left running at the time of the accident. Stephen Walkins Dep. Testimony, Defendant's Exhibit A, p. 19. It was their usual practice to leave the truck running. *Id.* They would periodically move the truck forward "so we wouldn't have to drag the brush so far or carry the brush so far. We would just move along in a line and maybe work in a 10 to 15–foot area. When that was cleared, the truck would be pulled forward." *Id.* at 19–20.

oriented at the time of the accident because she was in the process of entering the vehicle in order to make the return trip home"); *Shultz v. Nationwide Ins. Co.*, 373 Pa.Super. 429, 541 A.2d 391, 393 (1988) (holding that individual was "vehicle oriented" because she "was engaged in refueling her vehicle by pouring gasoline into the tank.")

Plaintiff asserts that there is an important distinction between the decedent in the present case,[4] who was required by her employer to be outside the vehicle, and the individuals in *Utica*[5] and *Fisher*,[6] who were required by the law to be outside their vehicle. Plaintiff makes too much of this distinction. Whether motivated to comply with a statute or to earn a pay-

check, each of these individuals had compelling reasons to be outside their vehicles.

We find that the decedent's actions in the present case in reaching into the dump truck to load it were unequivocally connected with, and intimately tied to, the use of the vehicle.[7] The weight of the evidence establishes that the vehicle was running at the time of the accident and that the decedent repeatedly re-entered the truck and drove it forward as they cleared the brush. *See* Stephen Walkins Dep. Testimony, Defendant's Exhibit A, pp. 17–20, 30. Moreover, the decedent's co-worker testified that they were at the point in loading the truck where Linda was about to pull the truck forward along the road when the accident occurred. *Id.* at 36–37, 42.[8] Therefore, we conclude that the decedent

4. Plaintiff discusses other cases where individuals were held not to be "vehicle oriented" when they were outside of their cars due to employment requirements. In *Curry*, for example, the individual sustained injuries during the scope and course of his employment. *Curry v. Huron Ins. Co.*, 781 A.2d 1255 (Pa.Super.2001). The individual there was supervising construction at an airport when he crouched down to conduct an instrument reading and was struck by a vehicle. *Id.* at 1256–57. *Curry*, however, is distinguishable. The individual there was approximately twenty feet from his truck at the time of the incident, *Id.* at 1256, whereas the decedent in the present case was in physical contact with the truck at the time of the accident. In addition, other than a Federal regulation that required the individual to "use the beacon light on his employer's truck to mark his position," *Curry*, 781 A.2d at 1258, there is little indication that the individual's work in *Curry* was as "vehicle oriented" as the decedent's work was in the present case. Here, as the discussion above indicates, there is evidence that the engine was running at the time of the accident and that the dump truck was integral to her work. Stephen Walkins Dep. Testimony, Defendant's Exhibit A, pp. 11–19 (decedent repeatedly loaded the truck, periodically moved it forward, and had already made one trip back to the park to unload it). *Zukowski* is similarly distinguishable. The court there concluded that individual was

"approximately 100 yards away from the vehicle" and was "delivering fliers to homes in the area when he was hit, and, accordingly, was clearly not 'vehicle oriented.'" *Zukowski*, 1996 WL 368256, at *3. For the reasons just stated, we conclude that, in contrast to the individuals in *Curry* and *Zukowski*, the decedent in the present case was "vehicle oriented" rather than "highway or sidewalk oriented" at the time of the accident.

5. The decedent in *Utica* found himself outside of his car because of statutory requirements and the officer's request that he wait by the squad car. *Utica*, 473 A.2d at 1009.

6. The individual in *Fisher* stood in the beam of the vehicle's headlights to unload his rifle because state law prohibited a motor vehicle occupant from possessing a loaded gun. *Fisher*, 621 A.2d at 160.

7. The court believes that the primary purposes of a dump truck are to be loaded, to carry a load, and to be unloaded.

8. The decedent's co-worker testified, "I was even with the back of the truck so we had cleared up to there. So she probably would have pulled it forward and we would have cleared up to there, pulled it forward, cleared it up to there." Stephen Walkins Dep. Testimony, Defendant's Exhibit A, p. 37.

was "vehicle oriented" at the time of the accident.[9] Accordingly, we find that the third *Utica* factor is established.[10]

Plaintiff contends that the fourth *Utica* factor is not established because "Pennsylvania courts have determined that loading a vehicle is not a transaction essential to the use of a motor vehicle." Plaintiff's Brief, at 18, citing *Huber v. Erie Ins. Exchange*, 402 Pa.Super. 443, 587 A.2d 333 (1991). We disagree. Plaintiff's reliance on *Huber* for this proposition is misplaced. The claimant in *Huber* sought first party medical benefits under his automobile policy for injuries sustained while loading his vehicle. *Huber*, 587 A.2d at 333. His insurer denied coverage "relying on a clause in the policy which excluded first party benefits when the person sustains injury while loading or unloading a motor vehicle, except while occupying the motor vehicle." *Id.* First, the court is unaware of any such clause at dispute in the present case. Second, this clause indicates that an individual can be occupying a vehicle while loading or unloading it, otherwise the modifier "except while occupying the vehicle"

would be superfluous. Third, in holding that the individual was not entitled to coverage, the Superior Court there noted that "[t]here must be some causal connection between the motor vehicle and the injury before the motor vehicle insurer is required to pay first party benefits." *Id.* at 334. Fourth, in its holding, the court there relied on an earlier case, where benefits were denied to a claimant who was injured when he fell while unloading a boat from his car roof. *Id.*, citing *Dull v. Employers Mut. Cas. Co.*, 278 Pa.Super. 569, 420 A.2d 688 (1980). This is distinguishable from the present case where the court has already found a "causal connection between the motor vehicle and the injury" inasmuch as the decedent was required to load the truck as part of her job duties; was using the truck for the sole and exclusive purpose of loading brush; was leaning into the back of the truck; and was crushed against the truck. Additionally, there is no indication that the individual in *Huber* was struck by another car while he was in the process of loading his vehicle, rather it seems that he may have been injured in the act of loading the vehicle

**9.** Relying the Police Accident Report and the Police Accident Reconstruction Report, Plaintiff points out that the investigating Officer "determined that at the time of the accident, the decedent, Linda Jaskoloka, was a pedestrian." Plaintiff's Brief, p. 16, citing to Plaintiff's Exhibits B and C. This officer was then deposed and, when was asked what he meant by the term "pedestrian," he explained that it "[e]ssentially means that she was not an operator or in direct physical control of the motor vehicle at the time of the accident." Detective Christopher Wagner Dep. Testimony, Plaintiff's Exhibit E, p. 30. The fact of her direct physical control of the truck at the time of the accident is not disputed. This court does not find any support for the plaintiff's arguments in the detective's use of the word "pedestrian" in the police report.

**10.** Plaintiff hypothesizes that if we conclude that the decedent was an occupier of the truck in the present case, that "any person

driven to a job site remains an occupant of the transporting vehicle until the end of the work day." Plaintiff's Brief, p. 17. Even more far-fetched is plaintiff's assertion that "[s]tudents taken by bus to school remain occupants of that bus until transported home at the end of the day." *Id.* The court does not find these analogies compelling. Among other reasons, plaintiff does not indicate in either of its analogies that the individual is touching the vehicle throughout the day (as the decedent was at the time of the accident in the present case) so that they would similarly remain an occupant "until the end of the ... day." Moreover, a student's actions are not intimately connected to a school bus throughout the day and the plaintiff's analogy does not indicate that the worker's actions are intimately connected to the worker's vehicle (as the decedent in the present case at the time of the accident) "until the end of the ... day." Therefore, for these and other unspecified reasons, we reject plaintiff's analogies.

itself. Finally, the *Huber* court did not find the individual was engaged in a transaction essential to the use of the vehicle because "loading materials into his vehicle is not a transaction essential to the use of the vehicle, although it certainly may be a transaction convenient to the vehicle operator." *Id.* at 335.

Here, in contrast to *Huber*, the court finds that the decedent's actions in loading the brush were essential to the use of the vehicle at the time of the accident. The decedent could not have performed her employment duties (i.e. loading brush) without the dump truck. Indeed, the sole and exclusive purpose for which she was using the dump truck was to load it with brush. *See* Stephen Walkins Dep. Testimony, Defendant's Exhibit A at 9–11, 13–14, 16 (responding "no" to when asked if they had "any other purpose for being out there . . . other than loading the brush into the truck?"). When the decedent was loading the truck with brush, she was necessarily engaged in a transaction essential to the use of the vehicle because that was the sole and exclusive purpose for which she was using the dump truck. As testified by her co-worker, loading the truck was a prerequisite to driving the vehicle back to the township building. *Id.* at 9–11, 13–14, 41–42. Thus, her presence outside the vehicle was required by the very purpose for which she was using the vehicle. We therefore conclude that the decedent was engaged in a transaction essential to the use of the vehicle at the time. Accordingly, we find that the fourth *Utica* factor is established.

Because the court finds that the four *Utica* factors have been established, we conclude that decedent is covered under section B.3 of the insurance policy as "[a]nyone else 'occupying' a covered 'motor vehicle.' " Accordingly, we will grant summary judgment in favor of defendant and deny plaintiff's summary judgment motion.

**Conclusion**

For the foregoing reasons, we will grant the defendant's summary judgment motion and will deny the plaintiff's summary judgment motion. An appropriate order follows.

### *ORDER*

**AND NOW**, to wit, this _____ day of November 2003, defendant's motion for summary judgment (Doc. 34) is **GRANTED** and plaintiff's motion for summary judgment (Doc. 38) is **DENIED**. Therefore, the defendant is eligible to recover underinsured motorist benefits under the policy of insurance that Selective issued to Tobyhanna Township.