Dena YOUNGER, Plaintiff/Appellant,

v.

**RELIANCE INSURANCE COMPANY,**
Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Jan. 22, 1993.

Application for Permission to Appeal
Denied by Supreme Court
June 1, 1993.

T.J. Emison, Jr., Alamo, for appellant.

Harold W. McLeary, Jr. and John S. Little, Waldrop & Hall, P.A., Jackson, for appellee.

HIGHERS, Judge.

Plaintiff brought an action for the wrongful death of her husband, Joseph Dewayne Younger, against defendant, Barton L. Fowler, an uninsured motorist, and defendant, Reliance Insurance Company, the uninsured motorist carrier for the decedent's employer. The trial court granted summary judgment to the defendant, Reliance Insurance Company, holding that the decedent was not an insured person under the uninsured motorist endorsement of his employer's automobile insurance policy. Plaintiff has appealed and presents the following issues for our review: (1) Whether the decedent was an insured under the uninsured motorist policy definition as "anyone else occupying a covered vehicle." (2) Does the definition of "who is insured" in the uninsured motorist policy violate T.C.A. § 56–7–1201(a)? (3) Does the definition of "who is insured" in the uninsured motorist policy violate T.C.A. § 56–7–1205? (4) Whether the decedent was an insured under the policy definition of insureds as "you or any family member."

Appellant's decedent, Joseph Dewayne Younger, was an employee of Forked Deer Electric Membership Cooperative, Inc. ("Forked Deer"). On the night of July 11, 1990, Forked Deer dispatched Younger and several other employees to repair downed power lines. Younger drove the Forked

Deer bucket truck to an area of Highway 78 in Dyer County where a tree had fallen on the lines. He parked the truck and disembarked.

Younger then went into a ditch or field to work on the downed power lines. He took "sleeves" from the truck to splice together the broken lines.

The bucket truck was parked on the north bound side of the highway and was facing south. One half of the truck was in the north bound lane and one half of it was on the shoulder of the road. A bank ran along the shoulder of the road and dropped off into a ditch. Beyond the ditch was a field.

Perry Allen Wheeler and Mike Gillon had previously arrived at the scene in a Forked Deer pickup truck. Wheeler was in another area of the field working on lines and Gillon was at the back of one of the two trucks. Bobby Patton who traveled with Younger to the scene was in the back of the bucket truck preparing to go up in the bucket to work on lines.

At this same time, Barton Fowler was traveling in a northerly direction on Highway 78. Upon approaching the Forked Deer trucks, Fowler's vehicle ran off the highway and hit the left front corner of the bucket truck. His vehicle went down into the ditch and finally came to rest in the field.

Gillon and Patton went down the enbankment and into the ditch or field to look for Younger. They found him in a pond of water and carried him up onto the side of the bank. Fowler's vehicle struck Younger who apparently died instantly.

On November 19, 1990, appellant filed a wrongful death action in the Circuit Court at Dyer County against Fowler and appellee. The court entered a consent judgment against Fowler for $500,000 in compensatory damages and granted appellee's motion for summary judgment, stating that Younger was not afforded uninsured motorist coverage under the uninsured motorist endorsement of the insurance policy issued by appellee to Forked Deer.

Rule 56.03 of the Tennessee Rules of Civil Procedure provides that summary judgment may be granted where the evidence before the Court "[shows] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, the facts are undisputed; only a question of law is presented.

The applicable portions of the insurance policy issued by appellee to Forked Deer are as follows:

## BUSINESS AUTO POLICY

**PART I—WORDS AND PHRASES WITH SPECIAL MEANING**

A. **"You"** and **"your"** mean the person or organization shown as the named insured in ITEM ONE of the declarations.

F. **"Insured"** MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS AN INSURED IN THE WHO IS INSURED section of the applicable insurance.

**PART IV—LIABILITY INSURANCE**

A. **WE WILL PAY.**

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto.**

D. **WHO IS INSURED.**

1. **You** are an **insured** for any covered **auto.**

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except: ...

## UNINSURED MOTORISTS INSURANCE

A. **WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Family Member"** means a person related to **you** by blood, marriage or adoption, who is a resident of **your** household, including a ward or foster child.

2. "**Occupying**" means in, upon, getting in, on, out or off.

## B. WE WILL PAY

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured,** or **property damage** caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle.**

## D. WHO IS INSURED

1. **You** or any **family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

Appellant asserts that Younger was occupying "the bucket truck" at the time of his death and is entitled to the benefit of uninsured motorist coverage. The Reliance Insurance policy in paragraph 2, section D of the uninsured motorist endorsement, states that anyone "occupying a covered auto is an insured." In paragraph 2, section A of the uninsured motorist endorsement, "occupying" is defined to mean: "In, upon, getting in, on, out or off."

The Supreme Court recently considered the construction of the word "upon" within the meaning of an uninsured motorist policy. In *Tata v. Nichols,* 848 S.W.2d 649 (Tenn. 1993), a vehicle became disabled while traveling on I-40 in Memphis. Plaintiff and Larry Glidewell drove to the location of the disabled vehicle and positioned the two vehicles "nose-to-nose" on the shoulder of the highway. Plaintiff and Glidewell then attempted to "jump start" the disabled vehicle. Plaintiff was standing between the two vehicles and leaning under the open hood of the disabled vehicle to attach a set of battery cables to it when an uninsured motorist collided with the rear of the disabled vehicle. Plaintiff was crushed between the two vehicles and seriously injured.

The uninsured motorist policies on both the disabled vehicle and Glidewell's vehicle provided uninsured motorist coverage for "anyone else occupying a covered auto...." Both policies contain the word "upon" in the policy definition of occupying.

The Supreme Court said that the complete meaning of the term "upon" as used in the policy to define "occupying" was sufficiently ambiguous under the circumstances of *Tata* to require construction. The Court then turned to the issue of whether the plaintiff's activity in relation to the two vehicles was encompassed by the term "upon." Noting that some jurisdictions have defined "occupying" narrowly, the Supreme Court stated:

> [T]he majority of jurisdictions hold that "occupying," as defined in the policies before the Court, includes those who can establish a certain "relationship" with the insured car at the time of the accident. In setting out the criteria to consider in determining whether this relationship exists, courts have looked to factors such as the proximity between the claimant and the insured car in time, distance, and geography, as well as the intent of the claimant. These jurisdictions have struggled to develop an analysis which determines a "rational limit" to the activity that may be said to be encompassed within the term "occupying."

848 S.W.2d at 651.

After reviewing criteria for construing the word occupying in case law from other states, the Supreme Court stated, "these cases indicate the relationship contemplated, but they also demonstrate that 'upon' has no precise meaning except in the concept of particular facts." The Supreme Court said that the facts in *Tata* showed that the plaintiff's relationship with each vehicle was within the meaning of "upon." The Court noted that the plaintiff had not "severed" his relationship with the vehicle being used to "jump start" the disabled vehicle. The court also noted that the plaintiff was in very "close geographic and spatial proximity" to both vehicles, and that he was directly "engaged in activities involving both vehicles." The Court held that the plaintiff was an insured under both policies. 848 S.W.2d at 653.

Applying the *Tata* analysis, we conclude that the facts of our case show that the relationship of Younger with the insured vehicle was not within the meaning of "upon" and was beyond the rational limit to the activity that may be said to be encompassed within the term "occupying." Unlike the plaintiff in *Tata*, Younger "severed" his relationship with the insured vehicle. He took equipment from the truck and went into a field or ditch to repair the downed power lines. His activity and equipment were not dependent upon or directed towards the insured vehicle. Unlike the plaintiff in *Tata*, Younger was some distance from the insured vehicle. Although there is no unequivocal evidence in the record as to the exact distance between Younger and the bucket truck when he was struck by Fowler, both Wheeler and Patton stated in their depositions that he was away from the truck in a field or ditch. Finally, unlike the plaintiff in *Tata* whose activities were focused upon the uninsured vehicles, Younger's activities were focused on the downed power lines that were some distance from the bucket truck. He was not engaged in transactions essential to the use of or continued use of the vehicle. Accordingly, we hold that Younger was not occupying the bucket truck at the time he was struck by Fowler and thus is not an insured within the meaning of Forked Deer's uninsured motorist policy.

Appellant has also argued that T.C.A. § 56–7–1201(a) mandates that uninsured motorist coverage, if accepted, be coextensive with liability coverage. She further contends that appellee's attempt to make the meaning of "insured" for purposes of uninsured motorist coverage narrower than the meaning of that term under the liability section of the policy violates T.C.A. § 56–7–1205. As pertinent here, the liability insurance policy defines an "insured" as "anyone else ... while *using* with your permission a covered auto you own...." The uninsured motorist endorsement of the policy defines an "insured" as "anyone else *occupying* a covered auto ...," and defines "occupying" as "in, *upon*, getting in, on, out or off."

T.C.A. § 56–7–1201(a) provides:

**56–7–1201. Requirements and types of coverage—Presumptions.**—(a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner of commerce and insurance, for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

(2) Provided, however, that any named insured may reject in writing such uninsured motorist coverage completely or select lower limits of such coverage but not less than the minimum coverage limits in § 55–12–107.

T.C.A. § 56–7–1205 provides:

**56–7–1205. Minimum policy limits not increased.**—Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55–12–107, or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in § 55–12–107. Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits.

Under the facts of this case *Tata* is also controlling on the present issue. The defendants in *Tata* argued that:

[T]hough a narrow definition of "occupying" limits the uninsured motorist coverage to less than that required by the statute, the limitation is valid because of the

statutory provision allowing exclusions "which are designed to avoid duplication of insurance." T.C.A. § 56–7–1205. Defendants further contend[ed] that the definition of "occupying" is designed to and does prevent duplication of benefits under other coverages, which renders it enforceable.

848 S.W.2d at 654.

The Supreme Court rejected their argument, stating that "such an exclusion would clearly defeat the purpose of this statute." From the Court's discussion, it follows that once a person is insured under the liability policy, that person must also be insured under the insured motorist portion of the policy when the damages arise out of "the ownership, maintenance, or use" of the insured vehicle.

█ Since we have already determined that Younger was not "occupying" the insured vehicle at the time of his death, the next question would appear to be whether he was an insured under the liability portion of the policy, or, as the policy defines insured, whether Younger was "using" the insured vehicle at the time of his death. We think such a two-tiered analysis of the controversy presented by the facts of this case is unnecessary because the *Tata* court's discussion of the statutes at issue necessarily implies that the meaning of "occupying" encompasses the meaning of "use," making the inquiry the same.

The Supreme Court's analysis of "occupying" supports this conclusion. First, the *Tata* court discussed *Utica Mutual Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005, 1009 (1984), in its opinion and specifically set out four criteria that the *Utica* court established to construe the term "occupying." Those four criteria are:

(1) There is a causal relation or connection between the injury and the use of the insured vehicle;

(2) A person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) The person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.*

In setting forth these factors, the *Utica* court cited *Rau v. Liberty Mutual Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157, 162 (1978). The *Rau* court expressed those same criteria in considering when the question of when a person is "using" a vehicle.[1] Second, the *Tata* court declined to adopt the criteria of any specific case discussed in its opinion, rather it took into consideration all of the criteria in those cases in its analysis.

We conclude that our analysis of whether Younger was occupying an uninsured vehicle is sufficient to answer in the negative the question of whether Younger was using the uninsured vehicle.

Appellant also asserts that Younger was insured pursuant to paragraph 1, section D of Forked Deer's uninsured motorist policy. That section provides uninsured motorist coverage to "you or any family member." The uninsured motorist policy defines "family member" as a person "related to by blood, marriage or adoption, who is a resident of your household including a ward or foster child."

█ Appellant's argument is without merit because her construction of the definition of family member is forced, unnatural, unreasonable and extends the policy beyond what is fairly within its terms. *Dixon v. Gunter,* 636 S.W.2d 437, 441 (Tenn.App.1982). Most important, appellant's construction is contrary to Tennessee law. In *Dixon,* the court held that the phrase "your or any family member" in an insurance policy issued to a corporation did not extend uninsured motorist coverage to the deceased who was the president and sole stockholder of the corporation. Accordingly, Younger was not a fam-

---

1. The *Rau* court deemed the words "use" or "using" as contained in the uninsured motorist endorsement (defining an insured as "occupy-

ing") by force of statute or judicial construction. We are of the opinion that that same analysis is applicable under the facts of our case.

ily member as that term is defined in Forked Deer's uninsured motorist policy.

Affirmed. Costs are assessed to appellant.

CRAWFORD and FARMER, JJ., concur.