## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

CHARLES G. MILLER, IV and )
wife, BRENDA MILLER, )
                               )
      Plaintiffs/Appellants, )      White Circuit No. J-1376T
                               )
vs. )
                               )
DANA R. MABE and SHANE GANT, )      Appeal No. 01A01-9602CV-00056
a/k/a SHANE COOPER )
                               )
      Defendants, )
                               )
and )
                               )
THE GLENS FALLS INSURANCE )
COMPANY. )
                               )
      Unnamed Defendant/Appellee. )

**FILED**

**January 8, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF WHITE COUNTY
AT SPARTA, TENNESSEE

THE HONORABLE JOHN TURNBULL, JUDGE

For the Plaintiffs/Appellants:       For the Unnamed Defendant/Appellee:

Donald G. Dickerson               Daniel H. Rader, III
Cookeville, Tennessee            Cookeville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

WILLIAM C. KOCH, JR., J.

**OPINION**

This case involves the interpretation of an insurance policy. After being struck by a vehicle driven by defendant Dana R. Mabe ("Mabe"), plaintiff Charles G. Miller ("Miller") filed this personal injury lawsuit against Mabe and defendant The Glens Falls Insurance Company ("Glens Falls"). The trial court granted Glens Falls' motion for summary judgment, holding that Miller was not covered by the uninsured motorist provision of the Glens Falls policy because he was not "occupying" the insured vehicle at the time he was injured. Miller appealed the trial court's decision. We affirm.

At the time of the accident, Miller was employed as a technician by Cookeville Cablevision. Glens Falls provided insurance for Cookeville Cablevision, and Miller's work van was covered under the policy.

On the evening of December 11, 1992, Miller was called to repair a cable television line at a residence. Miller parked his van across from the residence and got out. He left the van's engine running, left the headlights on, turned on the emergency flashers, and had a beacon light flashing on top of the vehicle. To illuminate his work area, Miller plugged a large spotlight into the van's cigarette lighter and mounted it above the door to the van. He set out orange safety cones in front of and behind the van.

Miller then got a spool of cable wire from the van and carried it to a telephone pole near a tree. He took a ladder off the van, leaned it against the pole, climbed the ladder, and threw some of the cable wire over a branch of the tree. After that, Miller carried the ladder across the road and leaned it against a second pole.

At that point Miller returned to his van to retrieve his tool belt. The cable wire was laying on the ground across the road. After getting his tool belt, Miller climbed up one of the poles and attached the cable wire. He then climbed down and, using a limb stick, began pulling the cable wire tight and weaving it between the tree branches above the road. Miller was standing in the road with one foot on the yellow middle line, approximately three or four feet from his van, using the limb stick and looking up toward the tree branches and the wire, when he heard a car accelerating and was struck by Mabe's vehicle. He received serious injuries from the accident, and this lawsuit ensued.

Miller filed his lawsuit against Mabe and passenger Shane Gant for the injuries he sustained in the accident. A copy of the lawsuit was served on Glens Falls, the carrier of the uninsured motorist insurance policy for Cookeville Cablevision, the owner of the van Miller was using. Glens

Falls moved for summary judgment, asserting that Miller was not covered under the uninsured motorist insurance policy. The issues regarding the uninsured motorist insurance policy were severed from the plaintiff's tort claims by the trial court.

The Glens Falls insurance policy provided uninsured motorist coverage for:

B. WHO IS INSURED

1. You.

2. If you are an individual, any "family member."

3. Anyone else **occupying a covered "auto"** or a temporary substitute for a covered "auto.". . .

The policy defined the term "occupying" as "in, upon, getting in, on, out or off." In its motion for summary judgment, Glens Falls asserted that Miller was not covered because he was not "occupying" the covered vehicle at the time of the accident. The trial court granted summary judgment in favor of Glens Falls, finding that Miller was not "occupying" the van at the time of the accident. The trial court found that Miller:

> was not vehicle oriented at the time of the accident but that he was highway oriented and work oriented and wire oriented at the time of the accident.

From this decision Miller now appeals.

The facts pertinent to the issue presented are undisputed. Therefore, our inquiry involves only interpretation of the contract, a question of law. ***Rainey v. Stansell***, 836 S.W.2d 117, 118 (Tenn. App. 1992). In construing contracts, the terms "should be given their usual, natural and ordinary meaning. . . ." ***Id.*** at 118-19. No presumption of correctness attaches to the trial court's decision on a question of law such as interpretation of the policy, and we must determine whether Glens Falls is entitled to summary judgment based on the undisputed facts. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

On appeal, Miller asserts that the trial court erred in holding that he was not "occupying" the vehicle at the time of the accident. The interpretation of the term "occupying" in the uninsured motorist provisions of an insurance policy was discussed by the Tennessee Supreme Court in ***Tata v. Nichols***, 848 S.W.2d 649 (Tenn. 1993). In ***Tata***, a disabled vehicle was parked on the shoulder of a highway. ***Id.*** at 650. The plaintiff pulled his car onto the shoulder, nose-to-nose with the disabled vehicle, in order to "jump-start" the disabled vehicle. ***Id.*** The plaintiff was standing between the two vehicles, leaning under the hood of the disabled vehicle, attaching jumper cables

2

to the battery. *Id.* An uninsured motorist then struck the plaintiff's vehicle. *Id.* The plaintiff was crushed between the vehicles and seriously injured. *Id.*

In *Tata*, as in this case, the uninsured motorist provision of the insurance policies for the two vehicles provided coverage to persons "occupying" a covered vehicle. *Id.* One policy defined "occupying" as "in or upon or entering into or alighting from" a covered vehicle. *Id.* The other policy defined "occupying" as "in, upon, getting in, on, out or off" the covered automobile. *Id.* The Court focused on whether the plaintiff was "upon" either vehicle at the time of the accident. *Id.*

The Court first found that the term "upon" was ambiguous and required construction. *Id.* at 651. It then noted several cases discussing "occupying" and "upon." *Id.* at 651-52. In particular, the Court cited *Utica Mutual Insurance Co. v. Contrisciane*, 473 A.2d 1005 (Pa. 1984), in which certain criteria were established to determine whether the plaintiff was "occupying" a vehicle. *Tata*, 848 S.W.2d at 652. These criteria required determining whether:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.*, (quoting *Utica*, 473 A.2d at 1009). The Court in *Tata* then analyzed the facts in light of the *Utica* criteria:

> . . .[T]he facts in this case show that the plaintiff's relationship with each vehicle was within the meaning of "upon." The plaintiff had not severed his relationship with the Glidewell Jeep which was being used to "jump-start" the Horton vehicle. He was in very close geographic and spatial proximity to both vehicles, indeed under the hood of the Horton car, and he was directly engaged in activities involving both vehicles. These factual circumstances constitute the location or position described by "upon," and the plaintiff's relationship with each vehicle is within the policy definition of "occupying." The plaintiff, therefore, is an "insured" under both . . . policies.

*Id.* at 653.

The term "occupying" was also discussed in ***Younger v. Reliance Insurance Co.***, 884 S.W.2d 453 (Tenn. App. 1993). In ***Younger***, the decedent Younger was an employee of an electric company. ***Id.*** at 453. One evening, Younger and several other employees were dispatched to repair downed power lines. ***Id.*** Younger parked his truck near the highway and went into a ditch near the highway to work on the power lines. ***Id.*** at 454. An uninsured motorist hit Younger's truck and went down into the ditch, killing Younger. ***Id.***

The ***Younger*** court applied the criteria utilized in ***Tata*** and concluded that Younger was not "occupying" the vehicle at the time of the accident:

> Applying the *Tata* analysis, we conclude that the facts of our case show that the relationship of Younger with the insured vehicle was not within the meaning of "upon" and was beyond the rational limit to the activity that may be said to be encompassed within the term "occupying." Unlike the plaintiff in *Tata*, Younger "severed" his relationship with the inusred vehicle. He took equipment from the truck and went into a field or ditch to repair the downed power lines. His activity and equipment were not dependent upon or directed towards the insured vehicle. Unlike the plaintiff in *Tata*, Younger was some distance from the insured vehicle. Although there is no unequivocal evidence in the record as the exact distance between Younger and the bucket truck when he was struck by Fowler, both Wheeler and Patton stated in their depositions that he was away from the truck in a field or ditch. Finally, unlike the plaintiff in *Tata* who activities were focused upon the uninsured vehicles, Younger's activities were focused on the downed power lines that were some distance from the bucket truck. He was not engaged in transactions essential to the use of or continued use of the vehicle. Accordingly, we hold that Younger was not occupying the bucket truck at the time he was struck by Fowler and thus is not an insured within the meaning of Forked Deer's uninsured motorist policy.

***Id.*** at 456. Thus, in both cases, the ***Utica*** criteria were applied. In ***Tata***, the court concluded that the plaintiff was an "occupant," while in ***Younger***, the court concluded that the decedent was not an "occupant" and was therefore not covered.

In this case, Miller maintains that he was "occupying" the van at the time of the accident. He asserts that he was "working out of" the van to repair the downed cable wire. He had the engine running and was using the vehicle's lights to warn oncoming traffic of his presence. His work area was illuminated by the spotlight that was attached to the van. At the time of the accident, Miller was three or four feet from the van. Consequently, Miller argues that he had not "severed his relationship" with the van and remained "vehicle-oriented" at the time he was struck by Mabe's vehicle.

It is undisputed that, at the time of the accident, Miller was neither getting into the van nor getting out of it. Although he was utilizing the lights from the van, he was not using the van itself at the time of the accident. There is no "causal relation" between Miller's use of the van and his

4

being struck by Mabe's vehicle. Miller was standing in the middle of the road three or four feet from his van, closer than the decedent in *Younger* but far enough away that he could not be considered "upon" the vehicle. Miller's attention was clearly focused on using the limb stick to work the cable wire through the tree branches and was not focused on his van. This activity was in no way "essential" to the use of the van. Consequently, under the criteria applied in *Tata* and *Younger*, Miller was not "occupying" his work van at the time of his accident and therefore was not covered under the uninsured motorist provision of the Glens Falls policy.

The decision of the trial court is affirmed. Costs are taxed to the Appellants, for which execution may issue if necessary.



                                                          **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P. J., W.S.**

**WILLIAM C. KOCH, JR.,  J.**

5