IN THE COURT OF APPEALS

FILED

March 3, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

W. STEVEN RENFRO, JR.,          )    KNOX CIRCUIT
                                )    C.A. NO. 03A01-9710-CV-00447
                                )
          Plaintiff-Appellant   )
                                )
                                )
                                )
vs.                             )    HON. DALE WORKMAN
                                )    JUDGE
                                )
                                )
                                )
                                )
JOHN DOE,                       )    REVERSED AND REMANDED
                                )
          Defendant-Appellee    )


DAIL R. CANTRELL, Cantrell, Pratt & Varsalona, Clinton, for Appellant.


JANET L. HOGAN, Hogan & Hogan, Knoxville, for Appellee Ohio Casualty Insurance. Company.


O P I N I O N


McMurray, J.


This is an appeal from a summary judgment entered in favor of Ohio Casualty Insurance Company, an unnamed party brought before the court pursuant to T.C.A. § 56-7-1206. The question before us is whether the plaintiff, Steven Renfro, is an insured within the

meaning of Ohio Casualty's uninsured motorist (UM) policy provisions. The precise issue is whether the plaintiff, at the time of his injury, was "occupying" the covered vehicle as that term is defined in the policy under consideration. The trial court found, on motion for summary judgment, that the plaintiff was not "occupying" the vehicle. We reverse the judgment of the trial court.

The facts are not in dispute. On August 31, 1994, plaintiff, who was employed as a general construction laborer, received a call from his supervisor, Brent Thornell, who informed him that he and a fellow employee, Bill Hudlow, had run out of gasoline on the way to a work site. Thornell asked the plaintiff to bring them some fuel to service the truck. The truck driven by Thornell was insured under the Ohio Casualty's UM policy.

Upon his arrival at the site, plaintiff parked his vehicle three to four feet behind the disabled truck. The vehicles were parked on the right side of the road, not entirely but mostly off the pavement. Plaintiff brought two cans of gasoline and began pouring the first into the truck's tank. The tank was located near the rear of the driver's side of the vehicle. After the first container was empty, Thornell began filling the tank with the second container.

2

As this was occurring, the persons present heard the screech of brakes and saw an out-of-control car coming around the curve and heading for the truck. Hudlow shouted "run!" and the men scattered. Thornell ran across the road and dived into a ditch. The plaintiff and Hudlow ran away from the road and the truck, across an adjacent lawn. When they saw and heard the approaching car, plaintiff and Hudlow were standing between the two vehicles and plaintiff was placing the empty gas can in the back of the insured truck.

The car careened off the road and struck the plaintiff, dragging him for about 100 yards. The driver of the car never stopped and has not been identified nor apprehended. Hudlow testified that the car was approximately eighteen to twenty feet from the road at the point where it struck the plaintiff. Plaintiff sustained serious injuries and testified that he has no memory of the entire incident.

Plaintiff filed this lawsuit against the unidentified motorist, State Farm Mutual Insurance Company (the UM insurance carrier for the truck he had driven to the site of the accident), and defendant Ohio Casualty Group of Insurance Companies. The trial court granted summary judgment in favor of State Farm. That judgment is not involved in this appeal.

3

As stated earlier, the determinative issue in this case is whether plaintiff was "occupying" the disabled truck, as that term is defined by the defendant's UM insurance policy. If he was, the policy provides coverage for his injuries. The UM policy states that "'occupying' means in, upon, getting in, on, out or off." The controversy revolves around whether plaintiff can fairly be determined to have been "upon" the insured truck within the meaning of the policy.

Our interpretation of defendant's policy is guided by these well-established principles:

> The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." Blaylock & Brown Construction, Inc. v. AIU Insurance Co., 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. See e.g., Moss v. Golden Rule Life Insurance Co., 724 S.W.2d 367, 368 (Tenn. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. Allstate Insurance Co. v. Watts, 811 S.W.2d 883, 886 (Tenn. 1991).

Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993).

The Supreme Court in Tata was presented with a question of law identical to that presented here. Since Tata, in our view, is the prevailing law, we will follow the Tata analysis. The Tata court,

4

construing identical language in a UM insurance policy, determined that the word "upon" "has no precise meaning and is, therefore, sufficiently ambiguous under the circumstances of this case to require construction."  Id. at 651.

The facts in Tata are quite similar to those in the present case.  In that case the plaintiff was crushed between two vehicles when an uninsured motorist crashed into the cars while plaintiff was trying to jump-start one of them on the side of the road.  The court engaged in a thorough review of the out-of-state jurisdictions that had construed the term "upon" within the concept of "occupying."  Id. at 651-53.  In so doing, the court rejected a narrow and constrictive construction of these terms, stating:

> Other jurisdictions, however, have not defined "occupying" so narrowly, and the majority of jurisdictions hold that "occupying," as defined in the policies before the Court, includes those who can establish a certain "relationship" with the insured car at the time of the accident.  In setting out the criteria to consider in determining whether this relationship exists, courts have looked to factors such as the proximity between the claimant and the insured car in time, distance, and geography, as well as the intent of the claimant.  These jurisdictions have struggled to develop an analysis which determines a "rational limit" to the activity that may be said to be encompassed within the term "occupying."

Id. at 651.

5

The <u>Tata</u> court cited and applied the test established by the court in <u>Utica Mut. Ins. Co. v. Contrisciane</u>, 473 A.2d 1005 (Pa. 1984), which utilized the following criteria:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

<u>Id</u>. at 652.

Subsequent Tennessee decisions addressing this issue have applied the <u>Utica</u> test. <u>Younger v. Reliance Ins. Co.</u>, 884 S.W.2d 453, 457 (Tenn. App. 1983); <u>Miller v. Mabe</u>, 947 S.W.2d 151, 154 (Tenn. App. 1997). The <u>Tata</u> court held that the plaintiff was "upon" and "occupying" both vehicles between which he was crushed, and therefore covered by the UM policies of both defendants. <u>Id</u>. at 653.

Applying this analysis to the particular factual context of the present case, we are of the opinion that plaintiff was sufficiently "vehicle-oriented" at the time of the accident to be fairly construed as "upon" the insured vehicle under the policy.

As was the <u>Tata</u> plaintiff, he was engaged in attempting to service the disabled insured vehicle. Thus, he was clearly "engaged in a transaction essential to the use of the vehicle at the time." According to Hudlow's undisputed testimony, plaintiff had been in physical contact with the truck and was in close proximity to it, if not actually touching it, when the hit-and-run driver approached. Further, plaintiff's injury occurred in relatively close proximity to the truck, and only a matter of a few seconds after he ran away from it. We find plaintiff had not "severed his relationship" with the insured vehicle by running away in an attempt to avoid being hit by the car.

The parties cite three subsequent Tennessee cases as pertinent to our analysis: <u>Younger</u> and <u>Miller</u>, <u>supra</u>, and the unreported case of <u>Brown v. White</u>, 1996 WL 118586, No. 03A01-9509-CV-00308 (Tenn. App. Mar. 19, 1996). <u>Brown</u> dealt exclusively with the interpretation of the concept of "entering" as opposed to "upon," a concept not applicable or relevant here. <u>Id</u>. at **3. Significantly, in both <u>Younger</u> and <u>Miller</u>, the plaintiffs were engaged in activities entirely unrelated to the service or operation of their respective vehicles. <u>Younger</u>, 884 S.W.2d at 456 (plaintiff "took equipment from his truck and went into a field or ditch to repair the downed power lines" when injured); <u>Miller</u>, 947 S.W.2d at 152 (plaintiff standing in middle of road, threading power cable between tree branches when injured). We thus believe the present

facts to be distinguishable from <u>Younger</u> and <u>Miller</u> and analogous to <u>Tata</u>.

Finally, the following statement by the <u>Tata</u> court, made in response to the contention that the definition of "upon" and "occupying" within a UM policy should be narrowly construed, is equally applicable here:

> This holding is consistent with the purpose of Tennessee's uninsured motorist statute. Tennessee's uninsured motorist law requires the insurer to offer uninsured motorist coverage at least equal to the limit carried by the named insured for general liability coverage. T.C.A. § 56-7-1201(a). The uninsured motorist coverage must extend to persons legally entitled to recover damages from an uninsured motorist, if the damages arise "out of the ownership, maintenance, or use" of the insured car. <u>Id</u>. "Our uninsured motorists statute was enacted in response to the growing public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists. Its purpose is to provide, within fixed limits, some recompense to. . .persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages." <u>Shoffner v. State Farm Mutual Automobile Insurance Co.</u>, 494 S.W.2d 756, 758 (Tenn. 1972), rev'd on other grounds, <u>State Farm Mutual Automobile Insurance Co. v. Cummings</u>, 519 S.W.2d 773 (Tenn.1975).

<u>Tata</u>, 848 S.W.2d at 654.

We are of the opinion that the application of the <u>Tata</u> analysis to the facts of this case requires a reversal of the summary judgment in favor of Ohio Casualty. Accordingly, the order

8

of the trial court granting summary judgment is reversed, and the case remanded for such further action as may be necessary.  Costs on appeal are assessed to the appellee.

 

 

 

_____
Don T. McMurray, Judge

CONCUR:

_____
Herschel P. Franks, Judge


_____
William H. Inman, Senior Judge

IN THE COURT OF APPEALS


W. STEVEN RENFRO, JR.          )      KNOX CIRCUIT
                               )      C.A. NO. 03A01-9710-CV-00447
                               )
          Plaintiff-Appellant  )
                               )
                               )
                               )
vs.                            )      HON. DALE WORKMAN
                               )      JUDGE
                               )
                               )
                               )
                               )
JOHN DOE,                      )      REVERSED AND REMANDED
                               )
          Defendant-Appellee   )


**<u>JUDGMENT</u>**


     This appeal came on to be heard upon the record from the Circuit Court of Knox County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was reversible error in the trial court.

     The order of the trial court granting summary judgment is reversed, and the case remanded for such further action as may be necessary. Costs on appeal are assessed to the appellee.


                              PER CURIAM