IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 10, 2001 Session

## JOHN WARFIELD and wife, ANNE WARFIELD, v. CARLOS CLIFFORD LOWE, and COREGIS INSURANCE COMPANY

Direct Appeal from the Circuit Court for Anderson County
No. 99LA0490     Hon. James B. Scott, Jr., Circuit Judge

FILED FEBRUARY 1, 2002

No. E2001-01042-COA-R3-CV

Plaintiff sought to establish insurance coverage for his injuries under his employer's policy. The Trial Judge declared no coverage. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and WILLIAM H. INMAN, Sr. J., joined.

Dail R. Cantrell, Clinton, Tennessee, for Appellant.

Douglas L. Dutton, Knoxville, Tennessee, for Appellee.

## OPINION

In this action to recover under the terms of an insurance policy, the Trial Court granted summary judgment in favor of the uninsured motorist carrier, denying coverage for plaintiff, because he was not "occupying" the vehicle within the meaning of the policy terms, when struck by defendant's vehicle during a traffic stop.

The essential facts are undisputed. Plaintiff was employed as a sheriff's deputy for Anderson County, and while on a routine patrol he observed defendant's vehicle and determined that the license plate number did not match the vehicle's make and model. He decided to effectuate a traffic stop and initiated his blue lights. Defendant traveled approximately five miles before stopping for a traffic light, and at that point plaintiff parked his patrol car in accordance with standard procedure, exited, and approached the suspect vehicle shouting verbal commands to the driver. Plaintiff testified in his deposition that he reached into the driver's window with his left hand, attempting to knock the ignition switch into the "off" position. His left hand was "inside the

passenger compartment" and defendant was trying to fend him off, striking plaintiff, grabbing at him, and trying to keep his hands away from the ignition. Defendant then turned the steering wheel sharply, accelerated, causing the rear of the driver's door to strike plaintiff, spun him around, causing his personal injuries.

Plaintiff claims coverage under the uninsured motorist provision of his employer's insurance policy. Defendant insurance company denied coverage on the basis that plaintiff was not an "occupant" as defined in the policy.

Under the terms of the policy, an insured for these purposes, is "anyone . . . 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." The policy states in the "Definitions" section: "'Occupying' means in, upon, getting in, on, out [sic] off."

Our review is *de novo* with no presumption of correctness of the Trial Court's decision. *Union Carbide Corp. v. Huddleson*, 854 S.W.2d 87, 91 (Tenn. 1993). It is well settled that insurance contracts are construed to give effect to the intention and express language of the parties. *Blaylock & Brown Const. Inc. v. AIU Ins. Co.,*796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). Ambiguous language purporting to limit coverage must be construed against the company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). Exceptions, exclusions, and limitations in policies of insurance are to be "most strongly construed against the insurer." *Hahn v. Home Life Ins. Co. of New York*, 84 S.W.2d 361 (Tenn. 1935). Uninsured motorist statutes are to be liberally construed to the end that innocent victims will be protected from irresponsible drivers. *Rau v. Liberty Mut. Ins. Co.*, 585 P.2d 157, 159 (Wash. Ct. App. 1978).

Our Supreme Court analyzed the meaning of "occupying" as used in an uninsured motorist policy which defined it as "in, upon, getting in, on, out of or off" the covered vehicle (the identical language is used in the policy in this case). *Tata v. Nichols*, 848 S.W.2d 649 (Tenn. 1993). The *Tata* Court surveyed numerous decisions on the meaning of "occupant," concluding that "upon" has no precise meaning except in the context of particular factual circumstances, and is sufficiently ambiguous to require construction. *Id.*, at 651, 653. *Accord, Whitmire v. Nationwide Mut. Ins. Co.*, 174 S.E.2d 391 (S.C. 1970); *Moherek v. Tucker*, 230 N.W.2d 148 (Wisc. 1975); *Wolf v. Amer. Cas. Co. of Reading, Pa.*, 118 N.E.2d 777, 780 (Ill. Ct. App. 1954). Rejecting the line of cases using narrow, constrictive, construction of these policies, the Court was persuaded by the broader approach developed in two Pennsylvania cases. In *Tyler v. Ins. Co. of North America*, 457 A.2d 95 (1983), one is said to "occupy" a vehicle until he "severs all connection with it. That point of severance is reached when he becomes highway oriented as opposed to being vehicle oriented. . . ." *Id.* A four-part test refined the concept in *Utica Mutual Ins. Co. v. Contrisciane*, 473 A.2d 1005 (1984). These criteria were adopted and applied in *Tata*:

> (1) there is a casual relation or connection between the injury and the use of the insured vehicle;
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at

the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

This test is thought to effectuate the purposes of Tennessee's uninsured motorist statute, that is, to "provide, within fixed limits, some recompense to . . . persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages." *Tata*, at 654, citing *Shoffner v. State Farm Mut. Automobile Ins. Co.,* 494 S.W.2d 756, 758 (Tenn. 1972), (*rev'd on other grounds).*

On appeal, the respective parties essentially agree the issue, applying the *Tata* test, is whether plaintiff was occupying his patrol vehicle at the time he made the stop and attempted to subdue the defendant. The critical issue is the relationship of plaintiff and the vehicle, i.e., whether his activities were "vehicle oriented" and/or whether he was engaged in an activity "essential to the use of the vehicle" or whether he "severed his relationship" with the vehicle.

Three Tennessee cases have applied *Tata* to construe the meaning of "occupancy" for the purposes of uninsured motorist coverage.[1] The facts of *Younger, Miller* and *Renfro*, support the conclusion that Officer Warfield had severed his relationship with his vehicle, even though he was using it to assist in a traffic stop. In *Younger* and *Miller*, the vehicles functioned more like a "tool" to assist the plaintiff in some aspect of his duties unrelated to the use or operation of the vehicle itself. In *Younger*, the truck had merely transported the worker to a jobsite where he took equipment out and went some distance away to repair power lines. In *Miller*, a cablevision worker used the vehicle's flashers and mounted a spotlight to light the area where he was working to install cable wire. In *Renfro*, the injured person was refueling another vehicle. He was "casually connected" in an activity related to the operation of the vehicle he was fueling, but had severed his relationship with his own vehicle. Thus, none of the Tennessee cases demonstrates a causal connection between the use of the vehicle and the plaintiff's injury. In each, the claimant's attention was not directed toward his vehicle, and his activities when injured were not "essential" to the continued use or operation of the vehicle. Only in *Renfro*, was the plaintiff causally connected to the vehicle, but it was the vehicle he was attending to refueling, not the one he drove to the scene. More importantly, the correct analysis is whether the actions were "essential to the use or the continued use" of the vehicle, not whether the vehicle was essential to the officer in making the traffic stop, as contended by plaintiffs.

Cases are cited where a person is held to have been an "occupant" even though they may have physically been many feet from the vehicle. However, the common point shared in all of these cases is that the person was still engaged in an activity somehow directed toward the use or

---

[1] The Tennessee cases are: *Younger v. Reliance Ins. Co.,* 884 S.W.2d 453 (Tenn. Ct. App. 1993); *Miller v. Mabe*, S.W.2d 151 (Tenn. Ct. App. 1997); and *Renfro v. Doe*, 979 S.W.2d 311 (Tenn. Ct. App. 1998).

continued use of the vehicle, although not in physical contact with it, whether it be attaching jumper cables, changing tires, pumping gas, directing traffic at an accident scene, or making a traffic report, etc.

We conclude, as did the Trial Court, that Officer Warfield was not "occupying" his patrol car for the purposes of coverage under the policy. It is undisputed that he left the vehicle and was focused upon the subject vehicle. He had reached inside it and attempted to subdue the defendant. Tenn. Code Ann. §56-7-1201(b)(1) states that the injured party cannot be an occupant of more than one vehicle at one time. Under the statute, since plaintiff was physically connected with defendant's vehicle and scuffling with the defendant still inside, he could not be an occupant of the covered vehicle at the same time.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to John and Anne Warfield.

_____
HERSCHEL PICKENS FRANKS, J.