# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 20, 2014 Session

## JERRY BEECH v. JOHN DOE

**Direct Appeal from the Circuit Court for Maury County**
No. 14667     Robert L. Jones, Judge

**No. M2013-02496-COA-R3-CV - Filed June 11, 2014**

The plaintiff in this case brought suit to recover uninsured motorist benefits. The insurance company moved for summary judgment contending that the plaintiff was not entitled to coverage because he was not "upon" the insured vehicle so as to "occupy" it. The trial court granted summary judgment in favor of the insurance company and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

L. "Rocky" McElhaney, L. Russell Belk, Jr.,, Nashville, Tennessee, for the appellant, Jerry Beech

Alan M. Sowell, Nashville, Tennessee, for the appellee, Great West Casualty Company

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Jerry Beech is an over-the-road tractor trailer truck driver employed by Elk Ridge Express, LLC ("Elk Ridge"). Elk Ridge owns the tractor trailer truck driven by Mr. Beech; it purchased uninsured motorist coverage on the truck from Great West Casualty Insurance Company ("Great West").

On May 12, 2012 Mr. Beech made preparations to haul a load to New York. He drove his personal vehicle to the Elk Ridge yard in Columbia, Tennessee, to retrieve the tractor trailer truck which had a fifty-three foot long trailer, plus a tractor cab. As had been his routine for five years, after retrieving the tractor trailer truck, Mr. Beech drove approximately two miles and parked the truck on the shoulder of the road. Mr. Beech exited the truck and walked across a five-lane highway, including a turn lane, to a convenience store approximately three hundred feet away to purchase a soft drink and chewing tobacco. Mr. Beech began walking back across the highway to return to the truck. He successfully crossed three lanes of traffic including the turn lane; however, at approximately 10:25 p.m. while in the traffic lane second-nearest the truck and while even with the back end of the trailer, Mr. Beech was struck by a dark-colored car which fled the scene. Mr. Beech sustained bodily injuries.

On May 10, 2013, Mr. Beech filed a Complaint against John Doe and he served a copy of the Complaint on Great West as uninsured motor vehicle insurance coverage provider. After filing its Answer, Great West moved for summary judgment arguing that Mr. Beech was not entitled to uninsured motorist benefits under the policy issued by Great West to Elk Ridge because he was not "occupying" a covered auto at the time of the incident. Great West attached the policy covering "Named Insured" Elk Ridge Express LLC, which provided, for uninsured motorist coverage purposes, in relevant part:

### B. WHO IS AN INSURED

If the Named Insured is designated in the Declarations as:

. . . .

2. A . . . limited liability company . . . , then the following are "insureds":
a.     Anyone "occupying" a covered "auto" . . . .

The policy further provided that as used in the Commercial Auto Extension Endorsement for

uninsured motorist coverage purposes, "'**Occupying**' means in, upon, getting in, on, out or off."

Following a hearing,[1] the trial court granted Great West's motion for summary judgment and it certified its Order as final pursuant to Tennessee Rule of Civil Procedure 54.02.[2] Mr. Beech timely appealed to this Court.

---

[1]The record does not contain a transcript from this hearing.

[2]The Amended Final Order Granting Summary Judgment provided in relevant part:

The issue before the Court is whether the plaintiff was "occupying" a covered auto. The term "occupying" is a defined term in the policy which "means in, upon, getting in, on, out or off." The Tennessee Supreme Court in Tata v. Nichols, 848 S.W.2d 649 (Tenn. 1993), held that the term "upon" was sufficiently ambiguous to require construction. The Court cited with approval the case of Utica Mut. Ins. Co. v. Contrisciane, 504 Pa. 328, 473 A.2d 1005 (1984), in which that court established several criteria to determine whether a plaintiff was "occupying" a vehicle. The Tennessee Supreme Court cited with approval those four criteria, which are:

(1) there is a causal relation or connection between the injury and use of the insured vehicle;
(2) the person asserting coverage must be in a reasonably close geographic proximity to the
insured vehicle, although the person need not be actually touching it;
(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

The undisputed facts show that Mr. Beech parked his tractor-trailer on the shoulder of Bear Creek Pike facing east. He got out of his truck and walked across the street to a convenience store to purchase a soft drink and tobacco. He was walking back across the highway to return to his vehicle when he was struck in the left lane of eastbound traffic by an unknown motorist. Applying these facts to the criteria set forth above, the Court is of the opinion the plaintiff was not "occupying" a covered auto at the time he was injured. Accordingly, Great West Casualty Company's motion for summary judgment is well taken and is hereby granted, dismissing Great West as a matter of law.

Tennessee Rule of Civil Procedure 56.04 requires the trial court to "state the legal grounds upon which the court denies or grants the motion" in the order reflecting the trial court's ruling. **Tenn. R. Civ. P. 56.04**; *see also Winn v. Welch Farm, LLC*, No. M2009-01595-COA-R3-CV, 2010 WL 2265451, at *5 (Tenn. Ct. App. June 4, 2010). "'Without such a statement . . . a reviewing court is left to wonder on what grounds the trial court granted summary judgment.'" ***Winn***, 2010 WL 2265451, at *5 (quoting *Eluhu v. HCA Health Servs. of Tenn,. Inc.*, No. M2008-01152-COA-R3-CV 2009 WL 3460370, at *21 (Tenn. Ct. App. Oct.
(continued...)

## II. ISSUE PRESENTED

In this appeal, we are asked to determine whether the trial court erred in finding that Mr. Beech was not "upon"[3] the covered auto for purposes of uninsured motorist coverage, and thus, in granting summary judgment in favor of Great West. For the following reasons, we affirm the decision of the circuit court.

## III. DISCUSSION

We interpret the insurance policy at issue under well-established principles:

> The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Construction, Inc. v. AIU Insurance. Co.*, 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where the language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *See e.g., Moss v. Golden Rule Life Insurance Co.*, 724 S.W.2d 367, 368 (Tenn. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. *Allstate Insurance Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991).

*Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993).

Our Supreme Court has previously found that the term "upon" as used to define "occupying" for uninsured motorist benefits is ambiguous. *Id.* at 651 ("[T]he word ["upon"] has no precise meaning and is, therefore, sufficiently ambiguous . . . to require

----

[2](...continued)
27, 2009) *perm. app. denied* (Tenn. Apr. 23, 2010)).

Here, we would have preferred the trial court to state which *Utica* criteria it deemed unmet. However, because application of the term "upon" to the undisputed facts is the sole issue on appeal–albeit with four criteria –and the facts relied upon by the trial court are readily ascertainable, we will "soldier on" with only limited guidance from the trial court.

[3]Again, we note that "occupying" is defined in the operative policy as "in, upon, getting in, on, out or off"; however, the parties concede that the only definition potentially applicable to Mr. Beech is "upon."

construction."). Further, in order to place a "rational limit" on the activity encompassed within the term "occupying" our Supreme Court has adopted four criteria, initially set forth in the Pennsylvania case of *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (Pa. 1984), to determine whether a person is "upon" a vehicle so as to "occupy" it:

> (1) there is a causal relation or connection between the injury and use of the insured vehicle;
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.* at 651-52; *see also Miller v. Mabe*, 947 S.W.2d 151, 154 (Tenn. Ct. App. 1997) (applying the *Utica* test); *Younger v. Reliance Ins. Co.,* 884 S.W.2d 453, 457 (Tenn. Ct. App. 1993) (same). "This test is thought to effectuate the purposes of Tennessee's uninsured motorist statute, that is, to 'provide within fixed limits, some recompense to . . . persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages.'" ***Warfield v. Lowe***, 75 S.W.3d 923, 925 (Tenn. Ct. App. 2002) (quoting *Tata*, 848 S.W.2d at 654).

In *Tata*, the plaintiff was standing between two insured vehicles attempting to jump start one when he was struck by a third vehicle. *Id.* at 650. Applying *Utica*, our Supreme Court determined that the plaintiff was "upon," and thus "occupying" the two vehicles between which he was standing. *Id.* at 653. Specifically, the Court noted that the plaintiff had not "severed his relationship" with the vehicle being used to "jump start" the other vehicle, that he was "in very close geographic and spatial proximity to both vehicles" and, in fact, was under the hood of one car, and that he "was directly engaged in activities involving both vehicles." *Id.*

However, in *Younger v. Reliance Ins. Co.*, 884 S.W.2d 453, 456 (Tenn. Ct. App. 1993), this Court, utilizing the *Utica* criteria, determined that the plaintiff *was not* "upon" the insured vehicle, and therefore, that he was not "occupying" it for uninsured motorist benefit purposes. In *Younger*, the decedent, an employee of an electric cooperative, was dispatched to repair downed power lines. *Id.* at 453. The decedent drove his employer's bucket truck to an area where a tree had fallen on power lines, he parked the truck and disembarked. *Id.* at 454. The decedent then went into a ditch or field to work on the downed lines. *Id.* Meanwhile, another vehicle ran off the highway, hit the bucket truck, hit the decedent in the

ditch or field killing him instantly, and came to rest in the field. *Id.*

In determining that the *Younger* decedent was not "upon" the insured bucket truck, we found that the decedent had "severed" his relationship with the vehicle. *Id.* at 456. He took equipment from his truck and walked "some distance" to a ditch or field to work. *Id.* We explained that "[h]is activity and equipment were not dependent upon or directed towards the insured vehicle[,]" his "activities were focused on the downed power lines that were some distance from the bucket truck[,]" and "[h]e was not engaged in transactions essential to the use of or continued use of the vehicle." *Id.*

In *Miller v. Mabe*, 947 S.W.2d 151 (Tenn. Ct. App. 1997), a cable repairman was struck by an uninsured motorist while working to repair a downed cable wire. When struck, he was three to four feet from the insured van. *Id.* at 154. The van's engine was running as the repairman was using the vehicle's lights to warn oncoming traffic of his presence and his work area was illuminated by a spotlight attached to the van. *Id.* The repairman argued that he had not "severed his relationship" with the van, but this Court disagreed. *Id.* We found that he was not "upon" the insured van, and thus was not "occupying" it for uninsured motorist coverage. *Id.* We found no "causal relation" between the repairman's use of the van and his being struck by the uninsured vehicle. *Id.* We noted that he was closer to the vehicle than the decedent in *Younger*, but we found that he was "far enough away that he could not be considered 'upon' the vehicle." *Id.* Additionally, we explained that his "attention was clearly focused on using the limb stick to work the cable wire through the tree branches and was not focused on his van." *Id.* Moreover, his activity "was in no way 'essential' to the use of the van." *Id.*

The eastern section of this Court again considered whether an employee was "upon" an insured vehicle for uninsured motorist benefits in *Renfro v. Doe*, 979 S.W.2d 311 (Tenn. Ct. App. 1998). The employee, a general construction laborer, received a call from his supervisor indicating that the supervisor, who was driving the insured vehicle, had run out of gasoline on the way to a work site. *Id.* at 312. Plaintiff arrived at the site and he parked his vehicle three to four feet behind the insured disabled truck. Plaintiff poured one container of gasoline into the disabled vehicle. *Id.* While his supervisor was pouring a second container into the vehicle's tank, the plaintiff stood between the two vehicles and he placed the empty gas can in the back of the insured truck. *Id.* While he was between the two vehicles, the plaintiff heard the approach of an out-of-control vehicle. *Id.* The plaintiff "ran away from the road and the truck[,]" but he was struck by the vehicle and was dragged approximately 100 yards. *Id.*

The eastern section, applying the *Tata* criteria, determined that the plaintiff was sufficiently "vehicle-oriented" at the time of the accident to be considered "upon" the insured

vehicle, and therefore, that the plaintiff was entitled to uninsured motorist coverage. *Id.* at 313. The Court found that the plaintiff was "clearly 'engaged in a transaction essential to the use of the vehicle at the time'" of the accident, as he was "engaged in attempting to service the disabled insured vehicle." *Id.* The Court further found that the plaintiff had not "severed his relationship" with the insured vehicle by running away from it in an attempt to avoid being hit by the out-of-control vehicle. *Id.* The Court explained that the plaintiff "had been in physical contact with the truck and was in close proximity to it, if not actually touching it, when the hit-and-run driver approached" and that "plaintiff's injury occurred in relatively close proximity to the truck, and only a matter of a few seconds after he ran away from it." *Id.* The Court distinguished *Younger* and *Miller*, explaining that in those cases "the plaintiffs were engaged in activities entirely unrelated to the service or operation of their respective vehicles." *Id.* at 314.

Finally, in *Warfield v. Lowe*, 75 S.W.3d 923 (Tenn. Ct. App. 2002), the eastern section of this Court found that a sheriff's deputy was not "occupying" his insured patrol vehicle for uninsured motorist benefit purposes. The deputy effectuated a traffic stop, he parked his patrol car, exited it, and approached the suspect vehicle. *Id.* at 924. The deputy reached into the suspect's vehicle through the driver's window attempting to turn off the ignition switch. The suspect "str[uck]" and "grabb[ed]" at him in an attempt to keep his hands away from the ignition. *Id.* The suspect then turned the steering wheel and accelerated causing the driver's door to strike the deputy and to cause him personal injuries. *Id.*

The eastern section noted that, in applying the *Tata* criteria, "[t]he critical issue is the relationship of plaintiff and the vehicle, i.e., whether his activities were 'vehicle oriented' and/or whether he was engaged in an activity 'essential to the use of the vehicle' or whether he 'severed his relationship' with the vehicle." *Id.* at 925. The Court determined that the deputy "had severed his relationship with his vehicle, even though he was using it to assist in a traffic stop." *Id.* at 926. The Court compared the *Warfield* facts to those in *Younger*, *Miller* and *Renfro* as follows:

> In *Younger* and *Miller*, the vehicle functioned more like a "tool" to assist the plaintiff in some aspect of his duties unrelated to the use or operation of the vehicle itself. In *Younger*, the truck had merely transported the worker to a jobsite where he took equipment out and went some distance away to repair power lines. In *Miller*, a cablevision worker used the vehicle's flashers and mounted a spotlight to light the area where he was working to install cable wire. In *Renfro*, the injured person was refueling another vehicle. He was "[causally] connected" in an activity related to the operation of the vehicle he was fueling, but he severed his relationship with his own vehicle." Thus, none of the Tennessee cases demonstrates a causal connection between the use of

-7-

the vehicle and the plaintiff's injury. In each, the claimant's attention was not directed toward his vehicle, and his activities when injured were not "essential" to the use or operation of the vehicle. Only in *Renfro*, was the plaintiff causally connected to the vehicle, but it was the vehicle he was attending to refueling, not the one he drove to the scene. More importantly, the correct analysis is whether the actions were "essential to the use or the continued use" of the vehicle, not whether the vehicle was essential to the officer in making the traffic stop[.]

*Id.* The Court acknowledged that, in some cases, persons had been held to "occupy" a vehicle "even though they may have physically been many feet from the vehicle." *Id.* The finding of occupancy, though, was grounded in the fact "that the person was still engaged in an activity somehow directed toward the use or continued use of the vehicle, although not in physical contact with it, whether it be attaching jumper cables, changing tires, pumping gas, directing traffic at an accident scene, or making a traffic report, etc." *Id.* Applying prior caselaw and the *Tata* criteria, the Court found that the deputy was not "occupying" his vehicle, ostensibly concluding that he was occupying the suspect's vehicle and that, statutorily, he could not occupy two vehicles at the same time.[4] *Id.*

In the instant case, again, Mr. Beech had parked his tractor trailer truck, exited the vehicle, and walked approximately three hundred feet to a convenience store to purchase a soft drink and chewing tobacco to consume on his haul to New York. As he was returning to the parked truck, while in the traffic lane second-nearest the truck and while even with the back of the trailer, Mr. Beech was struck by an unidentified vehicle.

After considering the *Utica* factors and the above-cited cases applying such factors, we find that Mr. Beech was not "upon" the insured vehicle when struck, and therefore, that he was not "occupying" it for uninsured motorist coverage. We find it unnecessary to consider whether Mr. Beech's distance from the truck–with at least one full traffic lane separating him from the truck–precludes a finding that he was "upon" it because we find other *Utica* criteria are clearly not met.

---

[4]We note that in its appellate brief, Great West also cites the memorandum opinion of *Slusher v. Mountain Laurel Assurance Company*, No. 3:06-CV-414, 2007 WL 2220412 (E.D. Tenn. 2007) in which a trucking company employee was found not to be "occupying" an insured vehicle which, after being parked, rolled down a hill and crashed into a building where the trucking company employee was eating lunch. We find this case inapposite, however, because "occupying" was defined in the insurance policy at issue in that case as "in, on, getting off, or getting out of." 2007 WL 2220412, at *3. Accordingly, the Court did not consider whether the plaintiff was "upon" the insured vehicle, which is the sole issue in the instant case.

On appeal, Mr. Beech argues that a causal relation exists between his injury and the insured truck because he was injured while making a customary stop in an employer-owned vehicle. This argument is most akin, however, to *Younger* in which the injured employee was found *not* to be "upon" the insured vehicle, which had simply transported the employee to the site where the injury later occurred. Here, Mr. Beech parked the truck on the highway shoulder and he planned to resume its use after making personal purchases; however, he was not operating the vehicle at the time of injury and its use did not bring about his injuries. Thus, we find no "causal relation or connection between the injury and use of the insured vehicle[.]" *Tata*, 848 S.W.2d at 652.

Mr. Beech also argues that he was engaged in a transaction essential to the use of his truck because, he claims, "[i]t is essential for a truck driver to have refreshments and comfort items on their trips" and it is "required by federal law that truck drivers make these stops on long trips." Mr. Beech cites 49 C.F.R. § 395.3 which provides, in relevant part:

(3) Driving time and rest breaks.

(i) Driving time. A driver may drive a total of 11 hours during the 14-hour period specific in paragraph (a)(2) of this section.[5]

(ii) Rest breaks. Except for drivers who qualify for either of the short-haul exceptions in § 395.1(e)(1) or (2), driving is not permitted if more than 8 hours have passed since the end of the driver's last off-duty or sleeper-berth period of at least 30 minutes.

Here, Mr. Beech was beginning a trip following an approximate thirty-four hour period of rest. Accordingly, the above-cited federal law is not implicated with regard to this stop and we find it does not render the stop "essential to the use of the vehicle[.]" *Id.*

In sum, we find that Mr. Beech severed his relationship with the insured vehicle when he exited it to purchase personal items and he had not yet resumed his relationship with it when the injury occurred. Accordingly, we conclude that Mr. Beech was not "upon" the vehicle so as to "occupy" it for uninsured motorist coverage purposes. The trial court's grant of summary judgment in favor of Great West is affirmed.

---

[5]Section (a)(2) provides that "[a] driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. The driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty." **49 C.F.R. § 395.3 (a)(2)**.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellant, Jerry Beech and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.